# EXHIBIT E

Filing # 187247483 E-Filed 12/04/2023 08:40:14 AM

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR COLLIER COUNTY, FLORIDA

WILLIAM P. LINDEMANN,  
    Plaintiff,  
v.

DIVISION: CIVIL  
CASE NO.: 20-CA-4033

ANDREA R. BALSAMO,  
    Defendant.  
_____/

## ORDER GRANTING MARCH 31, 2022 MOTION FOR SANCTIONS

THIS CAUSE came before the Court on September 28, 2023, on Defendant's Motion for Sanctions filed on March 31, 2022. The hearing was attended by Defendant/Former Wife Andrea Balsamo and her counsel Christopher Lombardo and Scott Pauzar, and by Plaintiff/Former Husband William Lindemann and his current counsel Raymond Bass. Plaintiff's prior counsel, Jason Castro, was notified of the hearing and failed to attend. After hearing argument, and reviewing the entire transcript of the November 30, 2021 deposition of Plaintiff/William Lindemann, the Court finds as follows:

1. Defendant's motion for sanctions relates to alleged misconduct of Plaintiff's counsel Jason Castro at the November 30, 2021 Deposition of William Lindemann. Generally, Defendant alleges that Attorney Castro interfered with the deposition by making numerous improper speaking objections, and inappropriately instructing his client not to answer questions without legal basis.

2. It is well established that "a trial court possesses the inherent authority to impose attorneys' fees against an attorney for bad faith conduct" *Moakley v. Smallwood*, 826 So.2d 221, 226 (Fla. 2002). Application of this inherent authority "must be based upon an express finding of bad faith conduct and must be supported by detailed factual findings describing the specific acts of bad faith conduct that resulted in the unnecessary incurrence of attorneys' fees." *Id* at 227.

3. Fla. R. Civ. P. 1.310(c) specifies that:

   > Any objection during a deposition must be stated concisely and in a nonargumentative and nonsuggestive manner. A party may instruct a deponent not to answer *only* when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to present a motion under subdivision (d).

   (emphasis added).

1

FILED: COLLIER COUNTY, CRYSTAL K. KINZEL, CLERK, 12/04/2023 08:40:14 AM

4. The Court has reviewed the entirety of the November 30, 2021 deposition of Mr. Lindemann, and finds that, as a result of Attorney Castro's pervasive impermissible conduct during the course of the deposition in violation of Rule 1.310(c), sanctions are warranted. *See R.J. Reynolds Tobacco Co. v. Morales*, 237 So.3d 1093, 1095 (Fla. 3d. DCA 2017) (holding that the trial court did not depart from essential requirements of the law when it entered sanctions against R.J. Reynolds for "abusive discovery tactics" due to "the continuous speaking objections, the on-the-record coaching of the witness, and the improper instructions to not answer" during a deposition in violation of Rule 1.310(c)).

5. During the course of the deposition, Attorney Castro inappropriately instructed his client not to answer on more than 30 separate occasions. Attorney Castro instructed Mr. Lindemann not to answer questions related to topics such as: where he lived (p.20-23), his current employment (p.24), his business interests (p.24-25), his professional licenses (p.29), prior marriages (p.30), his children's names (p.33), evidence supporting allegations made in his complaint (p.59-60), whether he made any payments for his children's health insurance (p.73-74), tax payments, (p.75), whether his children had an ownership interest in a particular entity (p.76-77), whether he made any payments for his children's tuition (p.84), whether he has ever declared bankruptcy (p.126), and his criminal history (p.127). These are just some of the many instances.

6. There was no basis under Rule 1.310(c) for Attorney Castro instructing Plaintiff not to answer the questions. None of the questions even arguably raised any issues of privilege. There was no limitation on evidence directed by the Court. Rule 1.310(d) was not implicated because no motion was ever presented to the Court during the course of the deposition and no order from the Court was ever obtained terminating or limiting the deposition. *See Smith v. Gardy*, 569 So.2d 504, 507 (Fla. 4th DCA 1990) (stating that "the arrogance of the defense attorney in instructing the witness not to answer is without legal justification.").

7. Although Attorney Castro was given an opportunity to defend his conduct and chose not to attend the hearing, it was clear from the context of the transcript that he did not believe that these questions were relevant to his client's claim. However, Attorney Castro's personal belief as to relevance is not a basis under the rule for instructing his client not to answer.

8. Indeed, early in the deposition, counsel for Defendant warned Attorney Castro that his instructions not to answer questions were inappropriate:

> MR. PAUZAR: I am trying to warn Counsel and the party that these questions that are, that he's being instructed to not answer at this deposition go to the heart of a number of our Affirmative Defenses and I'm only saying that because I would like [to] just get through this deposition and get questions that are legitimately posed to these Affirmative Defenses that we

2

raised, okay? I'm trying to get through these questions with these answers and I'm hoping to avoid having to bring anything to the court by way of moving for sanctions. . . .

p.35. His warning was ignored.

9. In addition to improperly instructing his client to refuse to answer questions, during the course of the deposition Attorney Castro made numerous impermissible speaking objections.[1]

10. For example, there were questions over whether or not Plaintiff was a resident of Naples, Florida, as was stated in his initial complaint. When asked about his understanding of the term "reside" Attorney Castro objected. His objection started on Page 52, line 5, and did not conclude until page 54, line 22.

11. During the course of that two page "objection," Attorney Castro answered the question on behalf of his client by stating that it was his client's intent to reside in Florida but that he "hopped around;" he accused Defendant's counsel of misrepresenting the record, attacking the integrity of his client, and violating the standards of conduct for the 20th Judicial Circuit; he claimed personal responsibility for the mistake in the petition and stated that he would amend the petition; and he faulted Defendant's counsel for not discussing this issue with him prior to the deposition.

12. In instances where an attorney has been found to have engaged in sanctionable conduct, "the amount of the award of attorneys' fees must be directly related to the attorneys' fees and costs that the opposing party has incurred as a result of the specific bad faith conduct of the attorney." *Moakley*, 826 So. 2d at 227.

13. In this case, the relief Defendant is seeking is an order requiring "Plaintiff and/or Plaintiff's counsel, to pay Defendant the attorney's fees and costs incurred in taking [the November 30, 2021] deposition."[2]

14. Reviewing the deposition transcript in its totality reveals that these were not isolated violations of 1.310(c) by Attorney Castro. Rather, the inappropriate instructions not to

---

[1] On Page 35 of the deposition, Attorney Castro cited to the 20th Judicial Circuit Administrative Order 2.20, which includes the standards of professional courtesy and conduct for lawyers practicing in the twentieth Judicial Circuit. According to Section IV(F)(7) of those standards "[w]hen objection to the form of a question, counsel should simply state 'I object to the form of the question.' The grounds should not be stated unless asked for by the examining attorney. When the grounds are then stated they should be stated succinctly."

[2] At the time of the hearing on Defendant's motion, Mr. Castro had withdrawn as counsel and, on September 8, 2023, Plaintiff's new counsel filed a notice of voluntary dismissal of the complaint. Therefore, at the time of the hearing, the only relief being sought by the Defendant was for attorney's fees and costs incurred in taking the November 30, 2021 deposition

answer and improper speaking objections were so extensive that it effectively corrupted the entire deposition.

15. Accordingly, the attorney's fees and costs sought are directly related to the bad faith conduct exhibited by Attorney Castro during the course of that deposition and, therefore, are 100% chargeable to Attorney Castro.

Accordingly, it is hereby **ORDERED and ADJUDGED**:

1. Defendant's Motion for Sanctions filed on March 31, 2022 is **GRANTED**.

2. Attorney Castro shall pay the attorney's fees and costs Defendant incurred in taking the November 30, 2021 deposition.

3. The Court reserves on the amount of those attorney's fees and costs.

**DONE AND ORDERED** in Naples, Collier County, Florida.

*Kyle Cohen*
eSigned by Cohen, Kyle S in 11-2020-CA-004033-0001-XX 12/04/2023 08:39:56 eMNzhVZ5

Electronic Service List

Frank S Pauzar III <spauzar@wpl-legal.com>, <nsears@wpl-legal.com>, <service@wpl-legal.com>

Jason Castro, Esq. <jason@goldengatelegalcenter.com>

Ray L. Bass, Jr., Esq. <service.basslawoffice@comcast.net>

Jason Kenneth Castro <castrolaw.service@gmail.com>, <maria@lawhonlaw.net>, <amanda@lawhonlaw.net>

4

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR COLLIER COUNTY, FLORIDA

WILLIAM P. LINDEMANN,  DIVISION: CIVIL
    Plaintiff, CASE NO.: 20-CA-4033
v.

ANDREA R. BALSAMO,
    Defendant.
_____/

### ORDER GRANTING DEFENDANT'S MARCH 24, 2022 MOTION FOR SANCTIONS AS TO COUNT VI OF PLAINTIFF'S AMENDED COMPLAINT

**THIS CAUSE** came before the Court on September 28, 2023, on Defendant's Motion for Sanctions as to Count VI of Plaintiff's Amended Complaint filed on March 24, 2022.[1] The hearing was attended by Defendant/Former Wife Andrea Balsamo and her counsel Chris Lombardo and Scott Pauzar, and by Plaintiff/Former Husband William Lindemann and his current counsel Raymond Bass. Plaintiff's prior counsel, Jason Castro, was notified of the hearing and failed to attend. After hearing testimony and argument, the Court finds as follows:

### FACTUAL BACKGROUND

1. This case arises out of a Complaint filed by William Lindemann alleging that he is owed certain sums of money from Andrea Balsamo pursuant to a Marital Settlement Agreement ("MSA") entered into between the parties on October 20, 2014.

2. The terms of the MSA provided that by November 30, 2014, Mr. Lindemann was to transfer to Ms. Balsamo his interest in a property located at 425 Dockside Drive, Unit 406, Naples, Florida (hereafter "Dockside Drive"), which was jointly held by the parties.

3. Although untimely, Mr. Lindemann eventually executed the Quit Claim Deed on June 10, 2015.

4. The terms of the MSA also required Ms. Balsamo to pay Mr. Lindemann $207,434.00 from the parties' Charles Schwab account. However, Ms. Balsamo took the position that as a result of Mr. Lindemann's breach of the MSA, she was not required to transfer the funds.

5. On December 16, 2020, over six years after the MSA was signed, Mr. Lindemann filed a Complaint against Andrea R. Balsamo, for breach of contract, equitable lien, unjust enrichment and foreclosure.

---

[1] The motion also sought summary judgment. However, because Plaintiff's new counsel filed a notice of voluntary dismissal of the complaint on September 8, 2023, the request for summary judgment is moot.

1

6. On October 7, 2021, Mr. Lindemann filed a motion to amend his pleadings and, on January 5, 2022, Mr. Lindemann was granted leave to file his Amended Complaint which added new claims, and new parties to this lawsuit.

7. The instant motion concerns Count VI of Mr. Lindemann's Amended Complaint.

8. Count VI of Mr. Lindemann's Amended Complaint asserts a claim for equitable lien and foreclosure with respect to real property located at 129-45 Vanderbilt Road, Unit 401, Naples, Florida 34110 (hereinafter "the Vanderbilt Property"). This property was not referenced in the MSA.

9. With respect to the Vanderbilt Property, Count VI of Mr. Lindemann's Amended Complaint made a number of factual assertions including:

    a. Defendant, Andrea Balsamo, after having emptied all funds from the Charles Schwab Account, and on February 27, 2020, purchased an interest in this property subject to this count. ¶82.

    b. As a result of the ANDREA R. BALSAMO's conduct, the imposition of an equitable lien is warranted against the subject property. ANDREA R. BALSAMO has utilized funds and/or income obtained through the terms of equitable distribution of assets contained in the martial settlement agreement to invest in, purchase, or improve the subject property, rather than pay the amounts obligated as part of the agreement. ¶84.

    c. By having usurped the funds form the Charles Schwab Account belonging to the Plaintiff, Defendant, Andrea Balsamo, was able to purchase an interest in the property 129-45 Vanderbilt Rd., #401, Naples, FL, 34110 with Defendants, Daniel Balsamo and Margaret Balsamo. ¶86(c).

10. On March 2, 2022, counsel for Ms. Balsamo sent a good faith letter to Attorney Castro pursuant to Fla. Stat. §57.105(4) attaching a copy of "Ms. Balsamo's Motion for Summary Judgment and for Sanctions as to Count VI of Plaintiff's Amended Complaint."

11. In addition to explaining why Count VI was factually unsupportable and untimely under the statute of the limitations, the March 2, 2022, "good-faith" letter included information how the Vanderbilt Property was acquired and a copy of the Special Warranty Deed. This information explained that there was no evidence to support the allegations that Ms. Balsamo used the assets from the Charles Schwab account to purchase the Vanderbilt Property and that, instead, she received an interest in that property from her parents in February of 2020 as a gift.

2

12. On March 24, 2022, after the requisite 21 days had passed following the "good-faith" letter without dismissal of Count VI, as promised, Ms. Balsamo filed this Motion for Sanctions.

13. At the September 28, 2023, hearing on Ms. Balsamo's motion for sanctions, Mr. Lindemann testified that:

    a. He did not know that Ms. Balsamo had acquired an interest in the Vanderbilt Property until his attorney Jason Castro told him. *See* Sep. 28, 2023 Hearing Transcript at p.79.

    b. He was not aware that he was attempting to foreclose on the Vanderbilt Drive property as part of his Amended Complaint. *Id.* at. p.80.

    c. "Mr. Castro filed a lot of things that [he] did not understand." *Id.* at p.81.

    d. It was Attorney Castro that told him that Ms. Balsamo used the Charles Schwab funds to acquire the Vanderbilt Property because, as Mr. Lindemann stated "How would I know?" *Id.* at p.83-84.

14. Mr. Lindemann testified that he had "absolutely zero" evidence to support the allegations in Count VI of his Amended Complaint and "had no idea if it did happen at all." *Id.* at p.93. Instead, Mr. Lindemann claimed that those factual allegations came directly from Attorney Castro, which is best encapsulated by this exchange:

    > Q. Okay. Sir, what evidence did you have that Ms. Balsamo used the Charles Schwab funds to acquire an interest in the Vanderbilt Drive property?
    > A. Just whatever Attorney Castro told me.
    > Q. And what did he show you to support that allegation?
    > A. I don't believe he showed me anything.

    *Id.* at p. 86.

15. Accordingly, the testimony at the hearing demonstrated that not only were these allegations relating to how Ms. Balsamo obtained her interest in the Vanderbilt Property factually incorrect, they appear to have been imagined by Attorney Castro.

3

## STANDARD OF REVIEW

16. Fla Stat. § 57.105(1) provides as follows:

    (1) Upon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee, including prejudgment interest, to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:

    (a) Was not supported by the material facts necessary to establish the claim or defense; or

    (b) Would not be supported by the application of then-existing law to those material facts.

17. When the requirements of §57.105 are met and no exception applies, the statute directs that "the court *shall* award a reasonable attorney's fee." *Id.* (emphasis added); *see also Casey v. Jensen*, 189 So.3d 924, 926 (Fla. 2d. DCA 2016) (stating that section 57.105 "requires" the court to award reasonable attorney's fees when the court finds that the claim was not supported by the material facts necessary to establish it).

18. "A claim is 'supported by the material facts' within the meaning of the statute when 'the party possesses admissible evidence sufficient to establish the fact if accepted by the finder of fact.'" *Siegel v. Rowe*, 71 So. 3d 205, 211 (Fla. 2d DCA 2011) (citation omitted).

19. However, "section 57.105 must be applied with restraint to ensure that it serves its intended purpose of discouraging baseless claims without casting 'a chilling effect on use of the courts.'" *Schurr v. Silverio & Hall*, 290 So. 3d 634, 637 (Fla. 2d. DCA 2020) (citations omitted); *see also Minto PBLH, LLC v. 1000 Friends of Fla. Inc.*, 228 So. 3d 147, 149 (Fla. 4th DCA 2017) (explaining that although the plaintiffs raised "tenuous" claims, when "there is an arguable basis in law and fact for a party's claim, a trial court may not sanction that party under section 57.105").

20. Although the case law directs that §57.105 should be used sparingly and with prudence, it is warranted under the circumstances of this case.

## ANALYSIS

21. Allegations are not aspirations. They must be supported by facts.

22. A complaint is not a work of fiction. Under Florida law, one of the hallmarks of frivolity is asserting material factual statements that are false. *See De Vaux v. Westwood Baptist Church*, 953 So.2d 677, 683 (Fla. 1st DCA 2007).

23. Here, Count VI of Mr. Lindemann's Amended Complaint made material factual allegations that Ms. Balsamo "usurped" Mr. Lindemann's money from the Charles Schwab Account to purchase the Vanderbilt Property. This was false. Not only were there no facts supporting that allegation, based on Mr. Lindemann's testimony at the hearing, it appears that the allegation was made up by Attorney Castro.

24. Assuming *arguendo* that at the time the Amended Complaint was filed either Mr. Lindemann or Attorney Castro were operating under an illusion of the veracity of those claims in Count VI, the March 2, 2022 "good faith" letter should have caused an examination of whether Count VI had legal or evidentiary support.

25. It didn't. Instead, Mr. Lindemann and Attorney Castro plowed forward undeterred until September 8, 2023, more than a year and a half after this motion was filed and three weeks prior to the sanctions hearing, when Mr. Lindemann voluntarily dismissed his complaint.[2]

26. However, by that time, the damage was done and Ms. Balsamo had been forced to expend attorney's fees to defend this meritless claim.

27. Section 57.105(a), requires that the award of attorney's fees "to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney." (emphasis added).

28. Since Count VI was legally baseless and the factual allegations were false, § 57.105(1) requires the Court to award Ms. Balsamo her reasonable attorney's fees and costs to be paid in equal amounts by Mr. Lindemann and Attorney Castro.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

1. Defendant's Motion for Sanctions as to Count VI of Plaintiff's Amended Complaint filed on March 24, 2022, is **GRANTED**.

---

[2] At the time the complaint was dismissed, Attorney Castro had withdrawn from the case and was replaced by Attorney Bass. Attorney Bass was on the case for just over a month before the complaint was dismissed. That decision to dismiss the complaint likely saved Mr. Lindemann from being on the hook for even more attorney's fees and costs that would have been incurred by Ms. Balsamo going forward.

2. Defendant is granted entitlement to her reasonable attorney's fees and costs in defending against Count VI of Plaintiff's Amended Complaint.

3. Those attorney's fees and costs should be paid in equal amounts by Mr. Lindemann and Attorney Castro.

4. The Court reserves on the amount of those attorney's fees and costs.

**DONE AND ORDERED** in Naples, Collier County, Florida.

*Kyle Cohen*

eSigned by Cohen, Kyle S in 11-2020-CA-004033-0001-XX 12/04/2023 08:41:10 SNkUNw5s

Electronic Service List

Frank S Pauzar III <spauzar@wpl-legal.com>, <nsears@wpl-legal.com>, <service@wpl-legal.com>

Jason Castro, Esq. <jason@goldengatelegalcenter.com>

Ray L. Bass, Jr., Esq. <service.basslawoffice@comcast.net>

Jason Kenneth Castro <castrolaw.service@gmail.com>, <maria@lawhonlaw.net>, <amanda@lawhonlaw.net>