UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LEAFWELL, INC., a Delaware
corporation

      Plaintiff,

v.                                    Case No:  2:25-cv-01132-JES-DNF

THE DOC APP, INC. d/b/a MY
FLORIDA GREEN, a Florida
Corporation

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on review of Defendant's Motion to Dismiss Plaintiff's Amended Complaint with Request for Judicial Notice (Doc. #26), Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. #27), and Defendant's Motion to Strike Immaterial and Scandalous Matter from Plaintiff's Amended Complaint (Doc. #30).  Leafwell, Inc. filed its Omnibus Response (Doc. #34).  The motions are resolved as set forth below.

**I.**

Defendant, The Doc App, Inc. ("My Florida Green"), argues that the Court lacks subject matter jurisdiction because the case does not pose a federal question and the parties' citizenship is not completely diverse.  (Doc. #27, pp. 4-6.)  Plaintiff, Leafwell,

Inc. ("Leafwell"), responds that citizenship is completely diverse, so federal jurisdiction exists. (Doc. #34, p. 14.)

**A.    Legal Standard for Subject-Matter Jurisdiction**

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of an action if a court lacks subject-matter jurisdiction. My Florida Green asserts only a facial challenge to subject matter jurisdiction. (Doc. #27, p. 3.) "In a facial challenge, a court must consider the allegations of the plaintiff's complaint as true and merely 'look and see if the plaintiff has sufficiently alleged a basis of subject[-]matter jurisdiction.'" Efron v. Candelario, 110 F.4th 1229, 1235 n.5 (11th Cir. 2024)(citation omitted).

"When a plaintiff files suit in federal court, she must allege facts that, if true, show federal subject[-]matter jurisdiction over her case exists. Those allegations, when federal jurisdiction is invoked based upon diversity, must include the citizenship of each party, so that the court is satisfied that no plaintiff is a citizen of the same state as any defendant." Travaglio v. Am. Express Co., 735 F.3d 1266, 1268-69 (11th Cir. 2013)(citations omitted). The party invoking federal jurisdiction must also allege that at the time the complaint was filed the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and

costs.  See 28 U.S.C. § 1332(a).  My Florida Green does not challenge the jurisdictional amount.

For purposes of diversity jurisdiction, a corporation is a citizen of every state in which it has been incorporated and the state of its principal place of business.  See id. § 1332(c)(1). A corporation's principal place of business is the location of its "nerve center," i.e., the "single place" where "the corporation maintains its headquarters — provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." Havana Docks Corp. v. Royal Caribbean Cruises, Ltd., 119 F.4th 1276, 1279-80 (11th Cir. 2024)(quoting Hertz Corp. v. Friend, 559 U.S. 77, 93 (2010)), *cert. granted*, 146 S. Ct. 80 (2025).

**B.   Diversity Jurisdiction Is Sufficiently Alleged**

My Florida Green argues that both parties are citizens of Florida, and therefore diversity jurisdiction does not exist.  My Florida Green asserts that Leafwell "alleges that it is a Delaware corporation with its principal place of business in Florida. (Ex. A)."  (Doc. #27, p. 4.)  Exhibit A is a form titled "2026 Foreign Profit Corporation Annual Report" filed on February 9, 2026, with the Florida Secretary of State identifying Leafwell's "Current

Principal Place of Business" as being in Miami, Florida, and identifying its officer/director as a person with a Miami, Florida address.[1]

Contrary to My Florida Green's argument, Leafwell did not allege that it was a Delaware corporation with a principal place of business in Florida. Rather, it alleged that it was a Delaware corporation "registered to do business in the State of Florida and dozens of other states." (Doc. #22, ¶ 2.) The Amended Complaint later states that "Leafwell's principal place of business is not in Florida." (Id. ¶ 9.)

While Leafwell conducts business in Florida, the Amended Complaint alleges that its Chief Executive Officer is in the United Kingdom and its Chief Operative Officer is in Virginia, while other directors are in Texas, Illinois, and North Carolina. (Id. ¶ 4.) Any in-person board meetings occur in the United Kingdom, Virginia, or Pennsylvania, but never in Florida. (Id. ¶ 6.) Leafwell's technology development is performed by contractors in Portugal and

---

[1] My Florida Green's sole reliance on the Annual Report is misplaced. First, the Court may not consider extrinsic evidence in a facial challenge to subject-matter jurisdiction. Second, the Report was filed after the instant action began, thereby being of limited usefulness since diversity of citizenship is established at the time of filing the complaint. See Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 570-71 (2004). Third, the Supreme Court rejected the argument that "the mere filing of a form . . . listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.'" Hertz, 559 U.S. at 97.

Romania, and Leafwell's corporate bank account is maintained with an online banking platform without physical branches.  (Id. ¶¶ 7-8.)  These factual allegations reasonably establish that the actual direction, control, and coordination of Leafwell occur outside of Florida, and therefore the Amended Complaint sufficiently alleges complete diversity.  Accordingly, My Florida Green's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. #27) is denied.[2]

## II.

My Florida Green also seeks to dismiss certain counts of the Amended Complaint for failing to state a claim upon which relief may be granted.  (Doc. #26.)

### A.   Legal Standard for a Motion to Dismiss

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

---

[2] The Amended Complaint alleges that the court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 "because at least one claim in this action concerns the interpretation and/or enforcement of order(s) that the U.S. District Court for the Middle District of Florida issued." (Doc. #22, ¶ 11.)  As discussed later, there is no claim in the Amended Complaint which properly states such a cause of action.

do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted). As the Eleventh Circuit has recently summarized:

> When reviewing a motion to dismiss, we accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim is facially plausible if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. This plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. When making the determination of whether a complaint states a plausible claim, we draw on our judicial experience and common sense.
> . . .
> We use a two-step process to determine whether a claim survives Rule 12(b)(6) scrutiny. At the outset, we determine what must be pled for each cause of action. . . . Then, we consider the well-pleaded factual allegations . . . to determine whether they plausibly suggest an entitlement to relief.

Caterpillar Fin. Servs. Corp. v. Venequip Mach. Sales Corp., 147 F.4th 1341, 1346-47 (11th Cir. 2025)(citations and internal punctuation omitted).

### B. Factual Allegations in the Amended Complaint

In brief, the Amended Complaint makes the following material factual allegations:

Leafwell is a telehealth platform that helps patients obtain medical marijuana certifications. (Doc. #22, ¶ 14.) My Florida Green is a company that also assists individuals obtain medical

marijuana certifications.  (Id. ¶¶ 1, 15.)   My Florida Green was founded by its current Chief Executive Officer Nicholas Garulay ("Garulay").  (Id. ¶ 17.)  Jason Castro, Esq. ("Castro") serves as My Florida Green's "In-House Corporate Counsel."  (Id.)

In August 2025, My Florida Green sent Leafwell a demand letter requesting that Leafwell cease business practices that violate Florida law.  (Id. ¶¶ 20-22.)  Specifically, My Florida Green took issue with Leafwell's "cost-free" medical marijuana certification events.  (Id. ¶ 23.)  In addition, My Florida Green requested information about Leafwell's business (e.g., financial relationships and referral agreements with Medical Marijuana Treatment Centers and written agreements with dispensaries or marketing firms related to patient acquisition).  (Id. ¶¶ 27-28.)

After Leafwell failed to respond to the letter, My Florida Green filed a multi-count Verified Complaint – signed by Castro - in state court alleging that Leafwell's practices were deceptive. (Id. ¶¶ 31-36.)  My Florida Green also filed a motion for preliminary injunction in state court.  (Id. ¶ 47.)  Leafwell removed the case to federal court in the Fort Myers Division of the Middle District of Florida.  (Id. ¶ 49.)  See The Doc App, Inc., d/b/a My Florida Green v. Leafwell, Inc., No. 2:25-cv-838-SPC-NPM (the "First Federal Action").

My Florida Green utilized its Verified Complaint in a variety of press releases and social media posts. (Id. ¶¶ 50-63.) These publications contended Leafwell put sales first rather than patients and engaged in "a practice that misleads patients and undermines physician independence." (Id. ¶¶ 51-53.) Garulay interacted with commenters on these posts and appeared on a local news station raising similar concerns. (Id. ¶¶ 55, 62-63.)

Castro sent approximately nine other cease and desist demands — like the one Leafwell received — to dispensaries and other companies. (Id. ¶¶ 69-71.) In one instance Garulay attended a Leafwell event on October 3, 2025, where he spoke with a provider before handing them a cease and desist notice. (Id. ¶ 74.) After providing this notice, Garulay then created a "massive scene" at Leafwell's event where he stated he would "take the business down" and other similar comments. (Id. ¶ 76.)

The Verified Complaint in the First Federal Action contained numerous hallucinations[3] which were the result of the use of generative artificial intelligence ("AI"). (Id. ¶¶ 37-46.) My Florida Green also filed a Motion for Temporary Restraining Order and Preliminary Injunction in the First Federal Action. (Id. ¶

---

[3] By "hallucinations" the Court refers to factual inaccuracies or fake legal authorities created by a generative AI chatbot.

78.)   Like the Verified Complaint, the motion was filled with hallucinations where AI made up legal authority, misquoted cases, and misrepresented propositions in cases.  (Id. ¶ 83.)  Garulay should have known of these hallucinations since Castro provided Garulay with the cases Castro cited in the filings — as if to serve as a citation check.  (Id. ¶ 139.)  After Leafwell identified these hallucinations in its Response, My Florida Green filed an amended motion, which was stricken for failure to comply with the Local Rules.  (Id. ¶¶ 84-91, 97.)

On the same day the amended motion was stricken, District Court Judge Sheri Polster Chappell issued an Order to Show Cause regarding the "numerous misrepresentations of legal authority." (Id. ¶¶ 97-101.)  Castro's response primarily blamed Leafwell's counsel for any issues in the filing.  (Id. ¶ 103.)  My Florida Green subsequently filed a notice of voluntary dismissal, but continued to communicate with Leafwell that it would file a new, similar suit.  (Id. ¶¶ 106-07, 134.)

After the voluntary dismissal Judge Chappell issued an Opinion and Order imposing sanctions against Castro due to the hallucinations and Castro's failure to take responsibility.  (Id. ¶¶ 108-17.)  Among other things, the sanctions required Castro to pay Leafwell's fees and costs — the amount of which was to be determined later.  (Id. ¶ 113.)

Leafwell filed the instant action in federal court (the "Second Federal Action") against My Florida Green on December 5, 2025.

On December 28, 2025, My Florida Green sued Leafwell, among other defendants, for a second time in state court (the "Second State Court Action").  Shortly thereafter Leafwell removed that case to federal court in the Middle District of Florida (the "Third Federal Action").  See The Doc App, Inc., d/b/a My Florida Green v. Leafwell, Inc., No. 2:25-cv-1231-KCD-DNF.  Leafwell contends the claims in the Third Federal Action should have been brought as a mandatory counterclaim in the Second Federal Action.  (Id. ¶¶ 120-21.)  Similar to the First Federal Action, My Florida Green continues to utilize its AI-generated complaint with hallucinations in the Third Federal Action.  (Id. ¶¶ 125-30.)

### C.    Leafwell Fails to State Claims in Counts I to III

Leafwell brings the following claims in its Amended Complaint: (1) Declaratory Relief; (2) Anti-Suit Injunction; (3) Abuse of Process; (4) Negligent Supervision of Castro; (5) Tortious Interference with Contractual Relationships; and (6) Tortious Interference with Business or Economic Relationships.  My Florida Green moves to dismiss Counts I through III for failure to state

a claim.[4]  (Doc. #34, pp. 3-9.)  The Court discusses each count in turn.

### (1)    Count I Lacks a Case of Actual Controversy and the Court Declines to Entertain the Claim

In Count I, Leafwell seeks declaratory judgment pursuant to 28 U.S.C. § 2201(a) declaring that My Florida Green is vicariously liable for Castro's conduct and for the monetary sanction imposed by Judge Chappell on Castro. Although no sanction amount has yet been determined and Castro has therefore not refused to pay, Leafwell asserts that due to "Castro's history of failing to pay and then employing techniques to evade sanctions, a substantial likelihood and present controversy exists that Castro will not pay any amounts he is ordered to pay to Leafwell."  (Doc. #22, ¶ 156.) Leafwell also sees present controversies concerning whether Castro concealed his position as In-House Counsel for My Florida Green to insulate it from any sanctions orders and whether My Florida Green should be deemed vicariously liable under the doctrine of respondeat superior to pay the sanctions.  (Id. ¶¶ 157-60.)

My Florida Green argues that Count I fails to state a claim because declaratory relief is a remedy and not a stand-alone cause of action.  (Doc. #26, p. 6.)  My Florida Green asserts that

---

[4] The Motion (Doc. #26, pp. 4-5) also references a claim for malicious prosecution, but no such claim exists in the Amended Complaint.

Leafwell must state "a viable underlying claim" for which declaratory relief can be granted and that it has not done so. (Id.)  Leafwell responds that a declaratory judgment claim is an independent cause of action.  (Doc. #34, p. 23.)

> The Declaratory Judgment Act provides in pertinent part:
>
> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).  While the statute authorizes a "free-standing" claim for a declaratory judgment — "whether or not further relief is or could be sought" — it must involve a "case of actual controversy."  Id.  For a case of actual controversy to exist "the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Sheriff of Broward Cnty. v. Evanston Ins. Co., 159 F.4th 792, 804 (11th Cir. 2025)(citation omitted).  The controversy cannot be "conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury."  Id.

Here, Count I alleges no proper case of actual controversy.

Essentially, Leafwell wants to use a separate case and another district judge to interpret an order entered by Judge Chappell and change or expand its scope by ordering someone other than Castro to be liable for the monetary sanctions.  The order by Judge Chappell is not a final order, nor has Judge Chappell determined the amount of monetary sanctions.  See The Doc. App, Inc. v. Leafwell, Inc., No. 2:25-cv-838-SPC-NPM, 2025 WL 3288251, at *6 (M.D. Fla. Nov. 26, 2025).  Therefore, Judge Chappell has the authority, under Federal Rule of Civil Procedure 54(b), to reconsider or clarify her order if requested, without an additional lawsuit.[5]  See Hornady v. Outokumpu Stainless USA, LLC, 118 F.4th 1367, 1379 (11th Cir. 2024).

Because the Order is not final, Castro has not failed to pay the sanction, and there is no reason to believe that he will improperly refuse to pay the monetary sanctions when imposed or attempt to evade the award, there is no case of actual controversy. Even if there were reasons to believe Castro would improperly evade

---

[5] To an outsider, it seems unlikely Castro concealed his position as In-House Counsel to insulate My Florida Green from any sanctions.  Leafwell stated in both its original Complaint and its Amended Complaint that Castro "was, and continues to be, [My Florida Green]'s (only) in-house legal counsel. In fact, [My Florida Green]'s website publicly holds Castro out as its 'In-House Corporate Counsel.'"  The footnote in each provided the website.  (Doc. #1 ¶ 16 n.1; Doc. #22, ¶ 17 n.2.)

compliance with an order, they would have no bearing on vicarious liability. As such, Count I fails to state a claim.

Additionally, "[s]ince its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995). Since there is an alternative remedy that is more appropriate and effective, and a new case seeking a declaratory judgment serves no useful purpose, the Court would in the exercise of its discretion decline to entertain this claim.

Accordingly, the motion to dismiss Count I is granted, without leave to amend.

### (2) 28 U.S.C. § 2283 Does Not Provide a Private Cause of Action Nor Does the First-to-File Doctrine Apply

In Count II, Leafwell seeks an injunction staying or precluding My Florida Green from proceeding with prosecution of the Second State Court Action and/or the Third Federal Action because its Second Federal Action — the instant case — was filed earlier than either. (Doc. #22, ¶¶ 163-69.) Count II asserts that its claim presents an exception to the Anti-Suit Injunction Act, 28 U.S.C. § 2283, because (1) My Florida Green filed the Second State Court Action instead of filing its claims as compulsory counterclaims; and (2) the "universally recognized"

-14-

first-to-file doctrine requires the instant case proceed in lieu of the later-filed cases.

My Florida Green argues that Count II fails to state a claim because injunctive relief is a remedy and not a stand-alone cause of action and there must be some "viable underlying claim." (Doc. #26, p. 6.) Leafwell responds that it is an independent cause of action. (Doc. #34, p. 23.)

Plaintiff's reliance on § 2283 is misplaced. "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Nothing in the statute suggests that Congress has created an affirmative private cause of action for an injunction, and Leafwell has cited no binding authority recognizing such a cause of action. There are currently no pending proceedings in state court, and, in any event, none of the three exceptions apply.

Additionally, the first-to-file doctrine is inapplicable. The doctrine applies where parties have instituted competing or parallel litigation in *separate* courts. See Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa., 713 F.3d 71, 78 (11th Cir. 2013). Here, both actions are in the Fort Myers Division of the Middle District of Florida and not before separate courts.

Accordingly, the parties may utilize the local rules to seek consolidation of the actions, as Leafwell has previously done.[6] See M.D. Fla. R. 1.07(b); Doc. #20.

Accordingly, the motion to dismiss Count II is granted, without leave to amend.

### (3) The Abuse of Process Claim Is Partially Barred by the Litigation Privilege and Otherwise Fails to State a Claim

Count III alleges My Florida Green initiated the First and Second State Court actions to extort Leafwell for information and ruin its business and took improper actions in furtherance of these lawsuits. (Doc. #22, ¶¶ 170-86.) My Florida Green argues that Leafwell failed to state a claim for abuse of process because: (1) the litigation privilege bars the claim; and (2) the claim requires "misuse of judicial process after it has issued." (Doc. #26, pp. 3-6.)

To state an abuse of process claim, a plaintiff must show: (1) an illegal, improper, or perverted use of process; (2) an ulterior motive; and (3) damages. Steinmetz v. Pickholtz, 414 So. 3d 309, 315 (Fla. 3d DCA 2025)(citation omitted). "[T]he tort of abuse of process is concerned with the improper use of process

---

[6] Leafwell may not, however, utilize its purported "Anti-Suit Injunction" claim to get an additional bite at the apple as to a previously denied motion.

after it issues." Id. (quoting Marty v. Gresh, 501 So. 2d 87, 89 (Fla. 1st DCA 1987)). "Consequently, whether a plaintiff can prevail on an abuse of process claim 'turns on . . . sufficient proof that [the defendant] misused process after it was served so as to exert some form of leverage over [the plaintiff].'" Id. (quoting Marty, 501 So. 2d at 89)(alterations in original). Alleging malicious intent and pre-process events are not enough to state a claim for abuse of process. Id. at 315-16.

### (a)  The Litigation Privilege Bars Part of Leafwell's Abuse of Process Claim

My Florida Green asserts the litigation privilege bars Leafwell's abuse of process claim. (Doc. #26, p. 5.) Leafwell responds that: (1) the litigation privilege does not apply when "false and malicious statements were made in order to bring about a judicial proceeding;" (2) the litigation privilege is a factual question which may not be decided on the motion to dismiss; and (3) the litigation privilege should not apply to a party's misuse of AI. (Doc. #34, pp. 21-22.)

Under Florida law, "[a]n affirmative defense is a defense which admits the cause of action, but avoids liability, in whole or in part, by alleging an excuse, justification, or other matter negating or limiting liability." St. Paul Mercury Ins. Co. v. Coucher, 837 So. 2d 483, 487 (Fla. 5th DCA 2002)(citation omitted).

-17-

Stated a little differently, an affirmative defense is one that, "if established, requires judgment for the defendant even if the plaintiff can prove his case by a preponderance of the evidence." Grippa v. Rubin, 133 F.4th 1186, 1196 (11th Cir. 2005)(quoting Wright v. Southland Corp., 187 F.3d 1287, 1303 (11th Cir. 1999)).

A plaintiff, however, is not required to negate an affirmative defense in the complaint. Wainberg v. Mellichamp, 93 F.4th 1221, 1224 (11th Cir. 2024)(citing La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004)(citation and internal quotation marks omitted), *abrogated on other grounds by*, Twombly, 550 U.S. 544). Nonetheless, a complaint must be dismissed if its factual allegations, on their face, establish an affirmative defense that bars recovery. Ingram v. Kubik, 30 F.4th 1241, 1250 (11th Cir. 2022); Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011). Thus, the rule is that a "complaint need not anticipate and negate affirmative defenses and should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent on the face of the complaint." Isaiah v. JPMorgan Chase Bank, 960 F.3d 1296, 1304 (11th Cir. 2020).

Florida law recognizes an absolute litigation privilege for "any act occurring during the course of a judicial proceeding, regardless of whether the act involves . . . [some] tortious

-18-

behavior . . . so long as the act has some relation to the proceeding." See Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co., 470 F.3d 1036, 1042 (11th Cir. 2006)(internal quotation marks omitted)(quoting Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co., 639 So. 2d 606 (Fla. 1994)); see also Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 950 So. 2d 380, 384 (Fla. 2007)(holding that the litigation privilege applies to all causes of action).  This privilege includes conduct that is "necessarily preliminary" to judicial proceedings.  See AGM Invs., LLC v. Bus. Law Grp., P.A., 219 So. 3d 920, 924 (Fla. 2d DCA 2017)(quoting Fridovich v. Fridovich, 598 So. 2d 65, 66 (Fla. 1992)).

The facts in the Amended Complaint are sufficient to establish the litigation privilege defense as it relates to the filing and contents of the Verified Complaint and the Motion for Temporary Restraining Order and Preliminary Injunction.  Although the documents contained hallucinations, filing a complaint or motion falls within the litigation privilege.[7]  See Fla. Evergreen

---

[7] While Plaintiff argues the litigation privilege does not apply to false and malicious statements, the cases cited are distinguishable.  In Grippa v. Rubin, 133 F.4th 1186, 1197 (11th Cir. 2025), the attorney mailed letters to state officials outside the judicial proceedings.  In Stucchio v. Tincher, 726 So. 2d 372, 374 (Fla. 5th DCA 1999), the court clarified that defamatory statements made to police to bring about criminal charges are only presumptively qualifyingly privileged.  The court proceeded to

-19-

Foliage, 470 F.3d at 1042.  As such, the litigation privilege bars the action to the extent the Amended Complaint seeks damages for the filing of the Verified Complaint or the Motion for Temporary Restraining Order and Preliminary Injunction.

The Amended Complaint, however, does not show the applicability of the litigation privilege as it relates to the demand letter.  No allegations in the Amended Complaint show that the demand letter was "necessarily preliminary" to My Florida Green's First Federal Action.  Without such showing, the litigation privilege will not bar the action as it relates to the demand letter.

### (b)    Leafwell Fails to State Its Abuse of Process Claim

Leafwell failed to sufficiently allege that My Florida Green improperly made use of process.  Although Leafwell pleads My Florida Green began its campaign of press releases, social media posts, and other actions at a Leafwell event and to Leafwell's partners, this only satisfies the chronological "post-process" requirement.

Leafwell's allegations that My Florida Green deliberately and intentionally misused the legal process to obtain information to

---

provide absolute immunity to a defendant who made an allegedly false and malicious statement to an attorney during an interview before trial.

which it was not entitled and ruin Leafwell's business is insufficient to allege that the process was used for an illegal, improper, or perverse purpose.[8]  Leafwell's claim alleges nothing more than the Verified Complaint was false and filed as a means to disseminate the information to siphon Leafwell's clients — by preventing them from hosting free certification events.  This is not sufficient.  See In re Fundamental Long Term Care, Inc., 873 F.3d 1325, 1346-47 (11th Cir. 2017)(holding that a complaint was required to allege that a defense presented was "not primarily designed for the simple goal of defending" the defendant as an incidental benefit to a defense will not create an abuse of process claim under Florida law); S&I Invs. v. Payless Flea Mkt., Inc., 36 So. 3d 909, 917 (Fla. 4th DCA 2010)(stating there is no abuse of process "when the process is used to accomplish the result for which it was created, *regardless of an incidental or concurrent motive of spite or ulterior purpose*"(emphasis in original)).

Additionally, Leafwell's allegations regarding Castro's meet-and-confer actions are insufficient.  Castro's actions in requesting Leafwell halt its business practices would have mooted My Florida Green's motion for temporary restraining order before

---

[8] The Court cannot look to the demand letter as it was delivered prior to the issuance of any process.

it was filed — thereby serving the purpose of the local rules. Further, aggressive tactics to obtain information that would benefit My Florida Green in the lawsuit cannot be said to be an illegal, improper, or perverse use of process. See CCP Harbour Island, LLC v. Manor at Harbour Island, LLC, 373 So. 3d 18, 29-30 (Fla. 2d DCA 2023)(stating that whether aggressive litigation tactics constitute an improper or perverted use of the civil litigation process may depend on the perspective and experience of the finder of fact). While Leafwell uses the term "extortion" in its Amended Complaint, it does not plead sufficient facts to support its conclusory allegation.

Accordingly, the motion to dismiss Count III is granted, but with leave to amend.

### (c)  The Court Takes Judicial Notice of Two Public Records

My Florida Green requests that the Court take judicial notice of the following public records pursuant to Federal Rule of Evidence 201: (1) Florida Statutes Section 817.505; (2) Florida Administrative Code Rule 64-4.016; and (3) Florida Department of Health Emergency Rule 64ER25-6. (Doc. #26, pp. 7-9.) The Court will take judicial notice of Florida Statute Section 817.505 and Florida Department of Health Emergency Rule 64ER25-6, because these documents can be accurately and readily determined from

-22-

sources whose accuracy cannot reasonably be questioned.  The Court, however, declines to take judicial notice of Florida Administrative Code Rule 64-4.016 because no such rule exists.

Although the Court takes judicial notice of Florida Statute Section 817.505 and Florida Department of Health Emergency Rule 64ER25-6, My Florida Green's arguments are outside the scope of the Amended Complaint and are merit-based, resolution of which is not permitted in a motion to dismiss.

### III.

Under Rule 12(f), a "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  "Even when allegations fall into one of the listed descriptions of matter that may be struck, a Rule 12(f) motion 'should be granted only when the pleading to be stricken has no possible relation to the controversy' because Rule 12(f) 'is a drastic remedy to be resorted to only when required for the purposes of justice.'"  United States ex rel. Sedona Partners LLC v. Able Moving & Storage Inc., 146 F.4th 1032, 1044-45 (11th Cir. 2025)(citations omitted).

The Amended Complaint contains a lengthy "Introduction" that reads like a closing argument.  The Court strikes this Introduction.  The Court finds that the paragraphs to which

defendant objects do not meet the Rule 12(f) standard.  The motion to strike is therefore otherwise denied.

Accordingly, it is now

**ORDERED:**

(1)  Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. #27) is **DENIED.**

(2)  Defendant's Motion to Dismiss Plaintiff's Amended Complaint with Request for Judicial Notice (Doc. #26) is **GRANTED IN PART AND DENIED IN PART** as follows:

    a.   The Court takes judicial notice of Florida Statutes Section 817.505 and Florida Department of Health Emergency Rule 64ER25-6;

    b.   Counts I and II are **DISMISSED without prejudice, and without leave to amend;**

    c.   Count III is **DISMISSED without prejudice**, but with leave to amend within 20 days;

    d.   The Clerk shall withhold judgment until conclusion of the case.

(3)  Defendant's Motion to Strike (Doc. #30) is **GRANTED** as to the Introduction and is otherwise **DENIED.**

-24-

**DONE AND ORDERED** at Fort Myers, Florida, this ___24th___ day of

April 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record

-25-