## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

Leafwell, Inc.,

      Plaintiff,

v.

The Doc App, Inc. d/b/a My Florida
Green,

      Defendant.

Case No. 2:25-CV-01132-JES-KRH

---

## <u>PLAINTIFF LEAFWELL, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DETERMINE ENTITLEMENT TO ATTORNEY'S FEES</u>

Plaintiff Leafwell, Inc. ("Leafwell") submits this opposition to the Defendant, The Doc App, In. d/b/a My Florida Green's ("MFG") Motion To Determine Entitlement To Attorney's Fees And Costs Under Florida's Anti-SLAPP Statute And The Court's Inherent Authority (D.E. 53, the "Motion").

## <u>INTRODUCTION</u>

MFG contends that Leafwell's allegations – regarding MFG's own history of abusing process in order to harm Leafwell's business, tortiously interfering with Leafwell's business relationships, and other extra-judicial conduct toward Leafwell in this business dispute – constitutes activity that is protected by Florida's Strategic Lawsuits Against Public Participation statute, Fla. Stat. § 768.295 (the "Anti-SLAPP Statute"). This Court should reject MFG's position for a number of reasons.

To begin, MFG's Motion presents a number of threshold problems. Contrary to MFG's contention, this Court's April 24, 2026 Opinion and Order (D.E. 44) (the

1

"Rule 12 Decision") does not entitle MFG to Anti-SLAPP fees because it did not dismiss all of Leafwell's claims against MFG. MFG's alternative attempt to seek anti-SLAPP fees on the basis of the hypothetical success of its pending Fed. R. Civ. P. Rule 12 motions also does not suffice because MFG already waived several of its Rule 12(b)(6) arguments by failing to assert them in its initial Rule 12(b)(6) papers, and a Rule 12(b)(1) dismissal effectively precludes this Court from issuing the requisite "without merit" finding that is necessary under the Anti-SLAPP statute.

Moving to the merits: Although MFG generally asserts that it made protected "public statements [that] concerned issues of public concern" and that its "court filings and litigation activity are petitioning activity" (Motion at 10), this does not meet the Anti-SLAPP Statute's defined protected conduct. In pertinent part, the statute protects the constitutional right of "free speech in connection with a public issue" and/or the right to "redress of grievances before the various governmental entities of this state [Florida]." See Fla. Stat. § 768.295(3)-(4). Leafwell's Second Amended Complaint's claims for Abuse of Process (Count I) and Tortious Interference (Count II or III) are not predicated on the statute's defined conduct; and, MFG makes no attempt to address this issue. And MFG's last request – for some "inherent authority" fee sanctions after Leafwell removed a separate case – is a hollow request, especially where Leafwell was found to be advancing reasonable arguments in "good-faith," and it does not relate to conduct in the instant case in any event.

MFG's Motion fails to establish that it is entitled to any form of relief.

2

## BACKGROUND

Leafwell and MFG are competitor businesses in Florida's medical marijuana certification space. D.E. 46 ("Sec. Amend. Compl."), ¶¶ 14-15. At some point in early 2025, MFG came to believe that Leafwell was the cause of MFG's own declining revenues and popularity among potential clientele. Id. at ¶ 19. Believing itself entitled to the entire population of Florida as presumptive clients, and that Leafwell was accordingly encroaching on its territory in that respect, MFG commenced a concerted effort of tortious undertakings to harm Leafwell's business. See generally, id.

### I.   The First MFG Action

On September 3, 2025, MFG filed a verified complaint against Leafwell in Florida state court, which Leafwell subsequently removed to the U.S. District Court for the Middle District of Florida on September 19, 2025. See id. at ¶ 31; see also The Doc App., Inc. v. Leafwell, Inc., Case No. 2:25-cv-838-SPC-NPM, D.E. 1 (hereinafter the "First MFG Action"). The First MFG Action claims were entirely premised upon Leafwell's purported violation of two (2) Florida state statutes – despite the fact that neither statute afforded MFG a private right of action. See Sec. Amend. Compl. at ¶¶ 36-37; 44-45; Doc App, Inc. v. Leafwell, Inc., No. 2:25-cv-838-SPC-NPM, 2025 LX 597488, at *3 (M.D. Fla. Nov. 26, 2025) (noting Leafwell "identified several areas of serious concern" including that "[Fla. Stat.] §§ 817.505 and 381.986(3)(b) create no private right of action."). Based on MFG's circular logic and factual incongruencies, it became apparent that MFG used artificial intelligence to craft its factual allegations and legal theory out of whole cloth. See id. at ¶ 43. (This has since been confirmed by

3

MFG's recent "verified" pleading in state court that effectively concedes that MFG did not have (then), and still does not have (now), any actual factual basis to believe that Leafwell committed any statutory violations. See The Doc App, Inc. d/b/a My Florida Green v. Leafwell, Inc., et al., No. 11-2025-CA-002981-0001-01 (Fla. 20th Cit. Ct. June 2, 2026), D.E. 33 (Proposed Amended Complaint) at ¶¶ 217, 227 (physicians did not "direct[ ] patients to any particular MMTC" or receive compensation from MMTCs).)

While the First MFG Action was pending in federal court, MFG sought to use the existence of its frivolous complaint against Leafwell (before MFG voluntarily dismissed it) to try to destroy Leafwell's business through extra-judicial means. Specifically, with reference to its then-pending claims, MFG initiated direct and purposeful communications with Leafwell's cooperative business partners (third-parties) – including at least nine (9) different dispensaries, related companies, and various physicians. Id. at ¶¶ 71, 77. Effectively, through various Cease and Desist and/or Demand Letters (and likely other direct communication from MFG as well), MFG leveraged the existence of its frivolous lawsuit against Leafwell in an effort to pressure these entities from ceasing any association with Leafwell. Id. at ¶ 71. MFG did so with the goal of coercing those third-parties into ceasing their existing working relationships with Leafwell – so that MFG could destroy Leafwell's business by depriving Leafwell of these third-party collaborators that it needs for its business model in Florida. See id. at ¶¶ 71-72. In fact, those communications to third-parties made specific reference to MFG's lawsuit – even appending a copy of MFG's complaint

4

against Leafwell; though, there were statements unrelated to the lawsuit as well. Id. at ¶¶ 71, 77-78. As a result of MFG's conduct, multiple dispensaries and at least one physician stopped engaging in cooperative business with Leafwell thereafter. Id. at ¶¶ 75, 82. Leafwell's Florida business suffered damage as a result of MFG's (mis)conduct. Id. at ¶¶ 75, 82.

Moreover, on October 23, 2025, MFG's CEO brought his Doberman canine to a commercial event in which Leafwell was participating – using copies of MFG's complaint to deliberately agitate people into leaving the event – even directly threatening at least one of the aforementioned third-parties. See id. at ¶¶ 85-90, 170-72. MFG's CEO also: began video recording and loudly announced he was serving a Cease & Desist Letter on the physician (id. at ¶ 86); created a disruption at the event requiring an event organizer to escort him (and his dog) out of the event (id. at ¶ 88); proclaimed that he would "take the business down" (id.); and forcefully interrogated at least one other representative in attendance (see id.). This, too, harmed Leafwell's business and the financial success of the event (which MFG's goal). Id. at ¶¶ 90, 225.

After MFG inflicted considerable damage to Leafwell's business in the manner described above, MFG voluntarily dismissed its First MFG Action. See id. at ¶¶ 117, 119.

## II.    Leafwell's Action Against MFG (the Instant Case)

On December 5, 2025, Leafwell initiated this action against MFG. Leafwell, Inc. v. The Doc App, Inc. d/b/a My Florida Green, Case No. 2:25-cv-1132-JES-DNF (M.D. Fla. Dec. 5, 2025), D.E. 1. Leafwell's January 26, 2026 Amended

Complaint (D.E. 22) asserted Declaratory Relief (Count I); an Anti-Suit Injunction (Count II); Abuse of Process (Count III); Negligent Supervision (Count IV); and Tortious Interference with Contractual and Business Relationships (Counts V & VI). See generally, id.

On February 9, 2026, MFG filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss that sought dismissal of Counts I, II, and III, only; it did not address any of the other claims (then-counts IV, V, and VI) of Leafwell's then-operative complaint (the "First Motion to Dismiss"). See D.E. 26. This Court's ensuing Rule 12 Decision (D.E. 44) dismissed Leafwell's Declaratory Judgment claim without prejudice for lack of controversy and in the court's discretion not to entertain such a claim; Leafwell's Anti-Suit Injunction claim without prejudice (Count II) for lack of a cause of action; and, finally, Leafwell's Abuse of Process claim (Count III) without prejudice, and with leave to amend it. Id. The Rule 12 Decision did not address Counts IV through VI of Leafwell's then-operative complaint because MFG's First Motion to Dismiss did not seek dismissal of those claims. See generally, id.

With leave to Amend its Abuse of Process claim, Leafwell then filed its now-operative Second Amended Complaint. D.E. 46. On May 13, 2026, after this Court directed MFG to file a response (D.E. 50), MFG filed a series of three (3) separate motions. (This opposition responds to one of them – MFG's Motion concerning Florida's Strategic Lawsuits Against Public Participation law (id., D.E. 53).)

III.   **MFG's State Court "Sequel"**

After Leafwell initiated this suit, MFG sought "refuge in state court" by

"repackag[ing]" its "earlier claims" against Leafwell and naming a "slew" of "Florida-based dispensaries and doctors" as defendants – so as to "tr[y] to dodge [the] federal forum at all costs." See The Doc App, Inc. v. Leafwell, Inc., No. 2:25-cv-1231-KCD-DNF, 2026 LX 203198, at *4-5, *18, 2026 WL 1217733 (M.D. Fla. May 5, 2026).

Leafwell removed that case to the Middle District of Florida on the basis of fraudulent joinder, but the Court later remanded it (the "Remand Order"). Id. In the Remand Order, the Court (Dudek, J.) noted that Leafwell's removal "passe[d] the test" for an objectively reasonable removal basis on fraudulent joinder, and that it raised "good-faith" arguments in the process. The Doc App, Inc., 2026 LX 203198, at *17. Also relevant for the present purposes are that Court's remarks – (i) that "even if Leafwell's removal had been entirely baseless, the Court would still decline to award fees" to MFG given MFG's "track record," and also (ii) that "equity hardly demand[ed] rewarding MFG with attorney's fees" for a few reasons, and (iii) that "[t]here is much to criticize about MFG's conduct in this dispute." See id. at *17, *18.

## LEGAL STANDARD

Florida's Anti-SLAPP Statute permits recovery of attorneys' fees only where the moving party establishes that the lawsuit is both (1) "without merit;" and (2) brought "primarily because" the defendant has exercised (inter alia): (a) the constitutional right of "free speech in connection with a public issue"; or (b) right to "redress of grievances before the various governmental entities of this state [Florida]." See Fla. Stat. § 768-295(3)-(4). A defendant has the burden to establish that plaintiff's claims trigger both prongs of the Anti-SLAPP statute. See Lam v. Univision Commc'ns,

7

Inc., 329 So. 3d 190, 197 (Fla. 3d DCA 2021) ("[T]he plain language of Florida's Anti-SLAPP statute does not shift the burden to Plaintiffs to establish that their claims have merit[.]").

## ARGUMENT

Assuming all the same that this Court may engage with Florida's Anti-SLAPP Statute, MFG's Motion fails on the merits for several key reasons.[1]

MFG implies that Anti-SLAPP fees may be properly awarded because of this Court's Rule 12 Decision. However, Anti-SLAPP fees are premature if even one claim survives, and the Rule 12 Decision did not resolve Leafwell's action in its entirety. Moreover, the Rule 12 Decision was devoid of Anti-SLAPP's requisite "express finding" – that Leafwell's action violated Florida's Anti-SLAPP statute. See D.E. 44.

MFG seems to alternatively argue that it would be entitled to Anti-SLAPP fees if its Second Motion to Dismiss were to be (hypothetically) allowed. But, in addition to being premature, MFG already waived several of its Fed. R. Civ. P. 12(b)(6) arguments – which effectively prevents this Court from disposing of the entire case; and MFG's pending Fed. R. Civ. P. 12(b)(1) motion would not result in the requisite finding on the merits, even if it were allowed. Moreover, MFG's Motion makes no effort to substantively engage with the requirements of Florida's Anti-SLAPP Statute. MFG conflates its (purported) "public statements [that] concerned public issues" and

---

[1] The Eleventh Circuit has yet to decide whether Florida's Anti-SLAPP statute applies in federal court. See Tate v. Doe, No. 9:23-cv-81150, 2024 U.S. Dist. LEXIS 9159, at *28 (S.D. Fla. Jan. 18, 2024) (noting Eleventh Circuit has not settled whether statute applies).

its "court filings and litigation activity [that] are petitioning activity" (Motion at 10) as something equivalent to protected "free speech in connection with a public issue" and/or the right to "redress of grievances before the various governmental entities of this state [Florida]." See Fla. Stat. § 768.295(3)-(4). But MFG's self-selected descriptions are not the same thing as the definitions provided in the statute.

Finally, MFG's request for fees through a finding that Leafwell removed a different case in some purported "bad faith" scheme should be rejected out of hand – considering Judge Dudek's Remand Order determined that Leafwell advanced good faith and reasonable arguments in support of its fraudulent joinder theory.

Each point is addressed in turn.

### I.   The Rule 12 Decision Cannot Serve as a Basis for Anti-SLAPP Relief.

MFG first suggests that the Rule 12 Decision provides a sufficient basis for Anti-SLAPP fees. See, e.g., Motion at 12 ("MFG does not ask the Court to decide disputed facts twice."). But, such an argument is defective (i) because the Rule 12 Decision did not fully resolve this dispute, and also (ii) because the Rule 12 Decision made no requisite "express finding" that Leafwell violated the Anti-SLAPP statute.

As to the former (i), Courts have consistently held that where a complaint states at least one viable cause of action, they cannot conclude, at the pleading stage, that the action is "without merit" for purposes of Florida's Anti-SLAPP Statute. See, e.g., Loomer v. Bill Maher & HBO, Inc., No. 5:24-cv-625-JSM-PRL, 2025 LX 165104, at *14 (M.D. Fla. Jan. 16, 2025) (plaintiff's defamation per se claims properly plead, mooting defendants' argument that complaint violated Florida's Anti-SLAPP statute); Markle v.

9

Markle, No. 8:22-cv-511-CEH-TGW, 2023 U.S. Dist. LEXIS 55418, at *34 (M.D. Fla. Mar. 30, 2023) (stating Anti-SLAPP request "premature" because plaintiff may state claim after amendment, and court cannot determine that "the lawsuit was filed 'without merit.'"); Pierre-Paul v. ESPN Inc., No. 16-21156-Civ-Cooke/Torres, 2016 U.S. Dist. LEXIS 119597, 2016 WL 4530884, at *2 (S.D. Fla. Aug. 29, 2016) ("Assuming [Florida's Anti-SLAPP statute] applies, this suit plainly has merit since two of its original three counts remain."). Thus, since this Court's Rule 12 Decision only dismissed three of the six counts that had been contained in Leafwell's then-operative complaint, MFG cannot receive Anti-SLAPP fees on the basis of the Rule 12 Decision.

As to the latter (ii), and relatedly, an Anti-SLAPP award necessarily requires "an express finding" by the trial court that the petitioner's suit violated the Anti-SLAPP Statute for the defendant to be entitled to fees. Lee v. Animal Aid, Inc., 388 So. 3d 25, 30 (Fla. 4th DCA 2024); see also 100plusanimalrescue, Inc. v. Butkus, No. 17-61893-CIV-Cooke/Hunt, 2021 U.S. Dist. LEXIS 111005, at *6 (S.D. Fla. June 14, 2021) (denying motion for Anti-SLAPP fees where "no ruling was made in regard to the anti-SLAPP statute"), R&R adopted by, 2021 U.S. Dist. LEXIS 237924, at *1 (S.D. Fla. Dec. 13, 2021). Because the Rule 12 Decision was devoid of any such "express finding" it cannot serve as a basis for such a fee award. And, furthermore, the without-prejudice dismissal of Count I (Declaratory Judgment) due to a lack of a judicial controversy does not constitute a finding on the merits; and a claim concerning federal sanctions liability does not involve statements to and/or petitioning of a Florida "government

10

entity" under the Anti-SLAPP Statute. See Fla. Stat. § 768.296(2)(b). Moreover, Count II (Anti-Suit Injunction) involved MFG's potential future conduct in state court; and not past conduct where it "exercised" purportedly protected activities. See id. at (3).

## II. MFG's Motion Fails to Establish That the Anti-SLAPP Statute Applies to Leafwell's Second Amended Complaint.

MFG appears to float another (seemingly alternative) theory – that it is entitled to an Anti-SLAPP fee determination now because it believes that its Second Motion to Dismiss will be granted (in its entirety) at some future date. See Motion at 53 (arguing that "if the Court grants MFG's pending motions, the claims will be without merit[.]" (emphasis added)). In addition to this request's being premature because it is grounded on a hypothetical, this position nonetheless fails on the merits.

### A. MFG's Motion concedes that not all of its activity is protected under the Anti-SLAPP Statute.

MFG's Motion fails to establish that Leafwell's claims are "primarily because" it engaged in conduct that the Anti-SLAPP Statute protects. The law explicitly states what it means by "free speech in connection with a public issue" and seeking redress before "government entities." But MFG ignores all of this – glossing over the statutory definitions – to generally declare that its activity triggers the Anti-SLAPP Statute. See Motion at 10. This argument fails on its face.

To set the table, Fla. Stat. § 768.295 defines "free speech in connection with a public issue" as:

11

> any written or oral statement that is protected under applicable law and <u>is made before a governmental entity</u> in connection with an issue under consideration or review by a governmental entity, or is <u>made in or in connection with a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work</u>.

Id. at (2)(a) (emphasis added). Thus, in essence, the Anti-SLAPP Statute's "free speech in connection with a public issue" prerequisite encompasses only statements that are either: (i) made before a governmental entity based on an issue that such entity is actively considering; or (ii) made in or in connection with artwork, various broadcasts, and the like. See id.

With respect to the second sub-category (ii), the Anti-SLAPP Statute does not encompass statements outside of (or not in connection with) those specified forms of media. See id.[2] Here, Leafwell's causes of action are premised on MFG's communications (about Leafwell) to third-party business entities and individuals – constituting abuse of process and tortious interference (more on this below). Thus, since MFG's communications in issue were not made in (or in connection with) any "play, movie, television program, radio broadcast" (etc.), they are not "free speech in connection with a public issue" per this subsection of the statute. See id.

And with respect to the first category (i), the Anti-SLAPP Statute defines "government entity" or "governmental entity" as the various branches of government "of the state." Id. at 2(b). Accordingly, as per the "plain language of the statute," it is

---

[2] Moreover, MFG's postings on its own website, "demand communications" (Motion at 10), and "third-party communications" (id.) clearly do not fall under this subsection of the Anti-SLAPP Statute. See Fla. Stat. § 768.2952(a).

12

"clear" that "a federal district court sitting in the state of Florida is not a governmental entity of the State of Florida." McSwain v. World Fuel Servs. Corp., No. 20-cv-21203-Bloom/Goodman, 2022 U.S. Dist. LEXIS 225352, at *17 (S.D. Fla. Dec. 14, 2022). Consequently, "petition[ing] for redress of grievances before various governmental entities" does not include "filings and litigation activity" (Motion at 10) that is not before a State of Florida judiciary. See Fla. Stat. § 768.295(2)(b); McSwain, 2022 U.S. Dist. LEXIS 225352 at *17.

Here, Leafwell's Second Amended Complaint is primarily grounded on conduct that clearly falls outside of either of the categories provided in the Anti-SLAPP Statute's definition of "free speech in connection with a public issue." See Fla. Stat. § 768.295(2)(a). In fact, MFG even concedes that not "every communication alleged by Leafwell is independently protected" under the statute. Motion at 9. Really, this concession – alone – is sufficient to deny MFG's Motion.

But, for the sake of example: between late September and early October 2025, MFG initiated direct written and/or oral communication (including Demand and/or Cease and Desist Letters) with nine different dispensaries and a number of physicians engaged in business with Leafwell – attaching a copy of MFG's complaint to these communications and threatening/coercing these entities into cessation of all business relations with Leafwell. Sec. Amend. Compl., ¶¶ 77-81, 161-62. Moreover, on October 23, 2025, MFG's CEO brought his dog to a commercial event in which Leafwell was participating – using copies of MFG's complaint to agitate people into leaving the event. Id. at ¶ 170. At that event, MFG's CEO also: began video recording

13

and loudly announced he was serving a Cease & Desist Letter on the physician (id. at ¶ 86); created a disruption at the event requiring an event organizer to escort him (and his dog) out of the event (id. at ¶ 88); proclaimed that he would "take the business down," while directing similar comments towards others (id.); and forcefully interrogated at least one other representative in attendance (see id.). This disruptive misconduct – accomplished in the presence of current and potential customers, in addition to Leafwell's third-party business associates – caused harm to Leafwell's business as described in Leafwell's claims for Abuse of Process (Count I) and Tortious Interference (Counts III & IV). See id. at ¶¶ 191-211, 212-25.

None of these statements and/or actions constitute "free speech in connection with a public issue" because they are neither (i) to a "government entity" nor (ii) made in (or in connection with) the statute's specified forms of media. See Fla. Stat. § 768.295(2)-(3). For these reasons, MFG's expansive assertion – that its "public statements concerned issues of public concern" (Motion at 10) – is unavailing.

Moreover, MFG's broad references to "petitioning efforts" (Motion at 4) and "court filings and litigation activity" (id. at 10) do not equate to "redress of grievances before the various governmental entities of this state [Florida]." Fla. Stat. § 768.295(3). This is for the obvious reason that MFG's 'litigation activity' was not primarily conducted before a "governmental entity" that is "of the state" of Florida. See id. at (2)(b). To the contrary, such activity occurred in federal court; and, as previously stated, "a federal district court sitting in the state of Florida is not a governmental

14

entity of the State of Florida." McSwain, 2022 U.S. Dist. LEXIS 225352 at *17. For example: after MFG's First Action was removed to the Middle District, MFG filed its Motion for Temporary Restraining Order and Preliminary Injunction which contained numerous fabricated citations and resulted in severe sanctions. See Sec. Amend. Compl., ¶¶ 49, 64, 121-30. MFG also used the existence of its pending (federal) claims against Leafwell as a means to coerce various businesses to cease any relationship with Leafwell, and in order to damage Leafwell as a business. See id. ¶¶ 71-77. Indeed, the balance of MFG's tortious conduct occurred while MFG's case was pending in the Middle District of Florida – which negates any conclusion that Leafwell's claims are "primarily because" MFG engaged in "petitioning activity" (Motion at 10) that was "before the various governmental entities of this state [Florida]." See Fla. Stat. § 768.295(3); see Lee, supra; see also Fla. Stat. § 768.295(2)(b); McSwain, 2022 U.S. Dist. LEXIS 225352 at *17.

But, really, MFG's Motion puts a gloss on all of its conduct. It contends that Anti-SLAPP "scrutiny" is "triggered" because it generally made "public statements about issues of public concern" and engaged in "litigation activity." Id. at 10. But, even if this were factually accurate, that is not the standard; the prerequisite is that the activity constituted "free speech in connection with a public issue," or seeking redress from "governmental entities of this state [Florida]." See Fla. Stat. § 768.295. And here, for the reasons discussed above, it did not. Accordingly, MFG's Motion should be denied.

15

B.    <u>MFG Will not be able to establish that Leafwell's Second Amended
Complaint is "Without Merit" because of Fed. R. Civ. P. 12(g)(2).</u>

MFG's Motion also asserts that Leafwell's action "will be without merit if the pending dismissal motions are granted." Motion at 11. Thus, MFG's argument is conditioned on the hypothetical success of its Second Motion to Dismiss. But MFG already filed a motion to dismiss, and that motion to dismiss did not seek dismissal of Leafwell's claims for Negligent Supervision (currently Count II) and Tortious Interference (currently Counts III & IV). So, MFG waived its current arguments with respect to these claims under Fed. R. Civ. P. 12(g)(2). And because it has plainly waived these arguments, MFG's pending Second Motion to Dismiss cannot wholly dispose of Leafwell's Second Amended Complaint – making any "without merit" determination premature.

To be clear, Fed. R. Civ. P. 12(g)(2) provides (in pertinent part) that "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." "[C]ourts in this Circuit have strictly adhered to Rule 12(g)(2)'s text." Kindred Hosps. E., LLC v. Med. Mut. Servs., LLC, No. 8:23-cv-1075-KKM-CPT, 2025 LX 193867, at *27 (M.D. Fla. June 11, 2025) (citations omitted) (cleaned up). "[T]he filing of an amended complaint will not revive the right to present by motion defenses that were available but not asserted prior to the amendment." Akers v. Newby, No. 8:21-cv-140-MSS-SPF, 2022 U.S. Dist. LEXIS 33498, at *8 (M.D. Fla. Jan. 7, 2022) (citation omitted); see also Hinesely v. Ensurem II LLC, No. 3:23-cv-5286-TKW-HTC,

16

2024 U.S. Dist. LEXIS 135027, at *4 (N.D. Fla. July 30, 2024) (noting that a motion to dismiss an amended complaint cannot raise arguments that were omitted from the motion to dismiss original complaint). Whether a defense is "available" depends on the degree to which an amended complaint alters and expands the factual allegations underlying the plaintiff's claims. See Kindred Hosps., LLC, 2025 LX 193867 at *24-25.

Without any further explanation, MFG's Second Motion to Dismiss asserts that Leafwell "materially changed its factual narrative after the [Court's] April 24, 2026 Opinion and Order." D.E. 52 at 2. But Leafwell only received leave of Court (see D.E.44) to alter allegations directly pertaining to the abuse of process claim; so, that is what the recent revisions pertained to (resulting in Leafwell's now-operative Second Amended Complaint). Consequently, now it is only the re-pled abuse of process claim that could properly be the subject of a new Rule 12(b)(6) motion. See Fed. R. Civ. P. 12(g)(2). But, to be clear: MFG's Second Motion to Dismiss (D.E. 52) argues that Leafwell's Negligent Supervision claim (Count II) fails because there was no duty owed. D.E. 52 at 14-15. And with respect to Leafwell's Tortious Interference claims (Counts III & IV), MFG argues that the Second Amended Complaint does not plead "identifiable relationships and independently actionable interference." Id. at 14-15. Regardless of their merit, these arguments were available to MFG when it filed its First Motion to Dismiss (because they simply attack the basic elements of the torts). Yet, MFG evidently chose not to raise them. Therefore, these arguments are waived for purposes of its Second Motion to Dismiss under Fed. R. Civ. P. 12(g)(2). See Kindred Hosps. E., 2025 LX 193867 at *27; Akers, 2022 U.S. Dist. LEXIS 33498 at *8; see also

17

Md. Cas. Co. v. Shreejee Ni Pedhi's, Inc., No. 3:12-cv-121-J-34MCR, 2013 U.S. Dist. LEXIS 16635, at *14 (M.D. Fla. Jan. 8, 2013) (stating "the mere inclusion of 49 paragraphs of new general factual allegations" did not demonstrate existence of new defense), R&R adopted by 2013 U.S. Dist. LEXIS 16634 (M.D. Fla. Feb. 6, 2013).

Thus, here, when it comes to the relief that MFG requests in the instant Motion, MFG's waiver of these newly-asserted arguments means its Second Motion to Dismiss cannot carry MFG's burden for its Anti-SLAPP argument. And as noted in Section I, supra, a court cannot conclude at the pleading stage that an action is "without merit" for purposes of Florida's Anti-SLAPP statute if it is not fully resolved. Therefore, any Anti-SLAPP finding would be premature.

As a final, related point: MFG appears to suggest that an Anti-SLAPP finding would also be appropriate if its (second) Rule 12(b)(1) motion were allowed. But, even if that motion were to be allowed, it nonetheless prevents a necessary Anti-SLAPP finding. Federal courts must satisfy the existence of jurisdiction before "proceeding to the merits" of a case. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 98 (1998); see also Fitzgerald v. McNae, No. 1:22-22171-CIV, 2024 LX 146327, at *10 (S.D. Fla. Aug. 21, 2024) ("Both federal and Florida law are clear that a dismissal for lack of subject matter jurisdiction [ ] is not an adjudication on the merits."). Meanwhile, Florida's Anti-SLAPP Statute specifically calls for an "express finding" that an action is "without merit." See Fla. Stat. § 768.295(3)-(4); Lee, 388 So. 3d at 30. A court cannot expressly find that something is without merit when a threshold dismissal for lack of subject matter jurisdiction precludes entertaining the merits. See Southern-Owners

18

Ins. Co. v. Maronda Homes, Inc., No. 3:18-cv-1305-J-32MCR, 2020 U.S. Dist. LEXIS 51608 (M.D. Fla. Mar. 25, 2020) (citation omitted) ("Outside of the exercise of valid diversity jurisdiction, state laws have no bearing upon the authority of federal courts, and therefore cannot bestow fee-shifting power.").

Accordingly, MFG's Motion should be denied.

### III. MFG'S Accusations of "Bad Faith" Litigation Conduct Are Expressly Contradicted by the Remand Order.

In a final attempt to secure some form of monetary relief, MFG contends that Leafwell used this suit to "manufacture federal control over a dispute Judge Dudek Remanded" – thereby warranting a finding of bad faith and sanctions under the Court's inherent authority. Motion at 8-9, 13. But, MFG's state court action has no bearing on whether MFG gets fees in this case (pursuant to this Court's inherent authority or otherwise) because it ignores the Remand Order's finding that Leafwell acted in good faith.

A court may exercise its inherent power "to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Purchasing Power, LLC v. Bluestem Brands, Inc., 851 F.3d 1218, 1223 (11th Cir. 2017) (citations omitted). Such inherent authority sanctions require a finding that "the party acted in bad faith." See Byoplanet Int'l, LLC v. Johansson, 792 F. Supp. 3d 1341, 1352 (S.D. Fla. 2025) .

Inherent authority sanctions are plainly not applicable here. Prior to rejecting MFG's request for attorneys' fees, Judge Dudek noted that the removal statute allows fees "only where the removing party lacked an objectively reasonable basis for seeking

19

removal." The Doc App, Inc., 2026 LX 203198, at *16 (citation omitted). According to Judge Dudek, Leafwell's removal necessarily "passe[d] the test" – because Leafwell's arguments "were not objectively unreasonable" and were raised in "good-faith." Id. at *16-17. And, even if they were without a basis in law or fact, the Court remarked that "equity hardly demands rewarding MFG with attorney's fees" given MFG's "track record" to date. Id. at *17 (citation omitted).

This finding necessarily negates MFG's position, here – that Leafwell is acting in bad faith with respect to MFG's state court litigation. For this reason, MFG's request for inherent authority sanctions should be rejected.

## CONCLUSION

For the reasons discussed above, MFG's Motion is due to be denied.

Dated: June 26, 2026

**HAYNES AND BOONE, LLP**

/s/ Paul Lewis
Paul B. Lewis, Esq.
Brett Walker, Esq.
Kevin M. Bergin, Esq.
Admitted pro hac vice
paul.lewis@haynesboone.com
brett.walker@haynesboone.com
kevin.bergin@haynesboone.com
Haynes and Boone, LLP
One Financial Center
Suite 1100
Boston, Massachusetts 02111
Telephone: (617) 281-2019

and

20

**BILZIN SUMBERG BAENA
PRICE & AXELROD LLP**
1450 Brickell Avenue, 23rd Flr.
Miami, Florida 33131
Telephone: (305) 350-7234
Facsimile: (305) 351-2195

Adrian K. Felix, Esq.
Florida Bar No. 30846
afelix@bilzin.com
ekravets@bilzin.com
eservice@bilzin.com

**Counsel for Defendant Leafwell, Inc.**

21

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon all other counsel of record, on June 26, 2026, via the ECF portal.

/s/ Paul Lewis
Paul B. Lewis, Esq.