**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

LEAFWELL, INC.,                                        Case No. 2:25-cv-01132-JES-KRH
a Delaware corporation,

      Plaintiff,

v.

THE DOC APP, INC. d/b/a
MY FLORIDA GREEN,
a Florida corporation,

      Defendant.
_____/

**DEFENDANT THE DOC APP, INC. D/B/A MY FLORIDA GREEN'S
MOTION FOR PRELIMINARY PRETRIAL CONFERENCE,
PROTECTIVE ORDER, CONFERRAL PROTOCOL, CLARIFICATION
OF LEAFWELL'S UNILATERAL CMR, AND LEAVE TO FILE
SEPARATE CASE-MANAGEMENT STATEMENT**

Defendant The Doc App, Inc. d/b/a My Florida Green ("MFG") moves for a

preliminary pretrial conference, protective order, conferral protocol, clarification of

Plaintiff Leafwell, Inc.'s unilateral Case Management Report filed as Doc. 63, and

leave to file a separate case-management statement after Leafwell identifies the

case-management positions necessary for MFG to respond accurately. In support,

MFG states:

1

## I. INTRODUCTION

This motion is not about avoiding a Rule 16 conference. It is about preventing a unilateral case-management filing from becoming a false record of agreement, waiver, scope, sequencing, privilege, and discovery boundaries.

Leafwell filed Doc. 63 as a "UNILATERAL CASE MANAGEMENT REPORT." In that filing, Leafwell did far more than propose dates. It inserted a disputed narrative accusing MFG of refusing to confer, proposed deadlines MFG never agreed to, stated no preliminary pretrial conference was needed, opposed phased discovery, stated no special handling was needed, and proposed discovery into communications involving MFG executives and general counsel and alleged use of artificial intelligence. Yet Leafwell left the privilege / Rule 502(d) section blank and refused to answer MFG's CMR-related questions before filing.

The problem is direct. Leafwell wants the CMR to set deadlines, discovery scope, ESI parameters, privilege issues, related-action treatment, and special handling without first identifying the positions needed to complete those sections accurately. MFG asked for those positions. Leafwell called the questions improper, refused to answer them, and then filed Doc. 63 anyway.

MFG previously served draft case-management language for conferral purposes. That draft was intended to separate matters actually agreed, matters disputed, and matters not meaningfully conferred upon. Because the draft used

party labels from the wrong case posture, MFG is not attaching it and is not asking the Court to rely on those labels. The point is narrower and undisputed: before Leafwell filed Doc. 63, MFG had already provided the substance of the safeguards it sought - no false agreement, no implied waiver, no blurred related proceedings, no unprotected privileged discovery, and no unilateral CMR narrative treated as joint case management. See Exs. A, C, D.

MFG requests an order confirming that Doc. 63 is not an agreed CMR and does not bind MFG; requiring Leafwell to identify its positions on the CMR issues listed below; allowing MFG to file a separate case-management statement after those positions are identified; requiring a protective order, ESI protocol, and Rule 502(d) order before sensitive discovery proceeds; and requiring a clear case-management attorney or protocol so that future conferrals create a reliable record.

## II. LOCAL RULE 3.01(g) CERTIFICATE

Counsel for MFG conferred and attempted to confer in good faith with counsel for Leafwell by written correspondence on June 18, June 19, June 24, June 25, June 26, June 27, June 29, July 1, and July 2, 2026. On June 29, 2026, MFG served Leafwell with a proposed motion, proposed order, draft CMR language, and supporting exhibits for conferral purposes. MFG requested Leafwell's position by July 2, 2026. Leafwell did not agree to the requested relief. Instead, on July 1,

3

2026, Leafwell transmitted and filed its unilateral CMR as Doc. 63. The requested relief is opposed or not agreed. See Exs. A, C, D, E.

## III. RELEVANT BACKGROUND

### A. Leafwell Itself Put Rule 16, Initial Disclosures, Scheduling, and Pending Motions at Issue.

On June 18, 2026, Leafwell's counsel asked to confer by telephone or Zoom concerning the Rule 16 conference, initial disclosures, scheduling, and the effect of MFG's pending motions. Ex. E. MFG responded that it was willing to confer, but requested that Leafwell identify the specific concerns to be discussed so that counsel could prepare for a meaningful conference. Ex. E.

Leafwell then created a separate problem concerning authority. Paul Lewis stated that Leafwell's matters were handled by his team as a whole, identified multiple attorneys across Haynes Boone and local counsel, stated that Brett Walker would handle Rule 16 and pro hac vice meet-and-confers, and stated that Paul would not personally join that meet-and-confer. Ex. E. MFG does not seek to control Leafwell's staffing. But when one lawyer requests a conference, another limits its topics, another refuses answers, another files the CMR, and another may later characterize the record, MFG needs one authorized case-management position on behalf of Leafwell.

4

**B. Leafwell Refused to Answer Questions That Correspond to CMR Topics.**

After Leafwell raised Rule 16, initial disclosures, scheduling, and pending motions, MFG asked questions directed to issue narrowing, discovery scope, damages, causation, pending motions, related proceedings, attorney authority, and privilege. Leafwell refused. Brett Walker stated: "I do not intend to answer those questions at this juncture." He added that "most" answers were in Leafwell's Complaint and related pleadings, characterized MFG's questions as "unprofessional, improper and unproductive," and stated, "I will not play into it." Ex. E.

Leafwell cannot use Rule 16 and Local Rule 3.02 as a one-way street. If Leafwell wants a CMR addressing discovery, ESI, privilege, deadlines, related actions, and special handling, then the positions needed to complete those sections are not "unrelated." They are the substance of the CMR.

**C. Leafwell Filed Doc. 63 Without Resolving the CMR Issues.**

On July 1, 2026, Leafwell's counsel sent MFG a proposed CMR and stated that Leafwell would file it shortly. Ex. D. Leafwell then filed Doc. 63 as a unilateral CMR. Doc. 63 states there was no planning conference, accuses MFG of refusing to participate unless Leafwell answered allegedly unrelated questions, and

says the information in the form originated from Leafwell and was not jointly agreed to by the parties.

Doc. 63 also proposes substantive case-management positions that are disputed or require clarification before MFG can submit its own accurate case-management statement. By example, Leafwell proposed a July 7, 2026 deadline for amendments and joinder; stated no preliminary pretrial conference is needed; stated discovery should not be phased; stated no special handling is needed; identified broad discovery categories including emails, texts, marketing materials, cease-and-desist letters, videos, profit-and-loss reports, and taxes; stated that Leafwell will seek communications between MFG executives and general counsel; stated that Leafwell will inquire into alleged unethical use of artificial intelligence; and left the privilege / Rule 502(d) section blank. Doc. 63 at 3-6.

After reviewing Leafwell's proposed CMR, MFG responded that there was no agreed CMR to file because the draft contained unilateral advocacy, disputed characterizations of the parties' conferral efforts, proposed deadlines and positions MFG had not agreed to, and statements that materially mischaracterized the parties' communications and MFG's position. Ex. D.

**D. The Court Has Already Refused to Consolidate This Case With MFG's Separate Action.**

The Court previously denied Leafwell's motion to consolidate this action with MFG's separate action. The Court recognized that this case primarily concerns Leafwell's allegations about MFG's litigation conduct, alleged use of AI, and alleged misuse of pleadings in press releases and third-party communications, while MFG's separate action primarily concerns alleged free-certification events and related conduct. Ex. B. The Court further concluded that there likely was not substantial overlap in facts or witnesses sufficient to warrant consolidation. Ex. B.

That ruling matters here. The CMR in this case should not be used to recreate, by implication, the overlap the Court already declined to impose. Related proceedings can be identified as related proceedings. They should not be blurred into a single discovery and case-management theory through unilateral CMR language.

**IV. ARGUMENT**

**A. Doc. 63 Should Be Clarified as Unilateral, Nonbinding, and Non-Waiving.**

A CMR is useful only if it distinguishes agreement from disagreement. Doc. 63 does the opposite. It includes Leafwell's unilateral account of conferral, Leafwell's unilateral dates, Leafwell's unilateral discovery subjects, Leafwell's

7

unilateral opposition to phased discovery, Leafwell's unilateral statement that no preliminary pretrial conference is needed, and Leafwell's unilateral statement that no special handling is needed.

MFG does not ask the Court to strike Doc. 63 merely because it is unilateral. MFG asks the Court to clarify that Doc. 63 is not an agreed CMR, does not bind MFG, does not waive MFG's objections, and does not prevent MFG from filing a separate case-management statement after Leafwell identifies the positions needed to make MFG's statement accurate.

## B. The Questions Leafwell Refused to Answer Are CMR Questions.

Leafwell has repeatedly tried to characterize MFG's questions as unrelated preconditions to a conference. That characterization fails because Doc. 63 itself places the same subjects at issue. Each unanswered category maps directly to the CMR form and to Rule 26(f).

1. **Claims and defenses actually at issue.** Doc. 63 gives a broad one-sentence description of the case, but MFG needs Leafwell to identify which alleged acts remain at issue after the Court's prior rulings and the operative pleadings. That information is necessary to complete the description of the action, identify disputed issues, define discovery subjects, evaluate amendment and joinder deadlines, and state MFG's own position without adopting Leafwell's narrative.

2. **Damages theory and causation.** Leafwell seeks broad discovery into communications, marketing materials, cease-and-desist letters, videos, profit-and-loss reports, taxes, and business records. Damages and causation drive proportionality, expert deadlines, mediation timing, dispositive-motion sequencing, and the scope of discovery. MFG cannot propose a fair discovery plan or mediation schedule without knowing what damages Leafwell claims, what causal chain it asserts, and what discovery Leafwell contends is proportional to those theories.

3. **Discovery into general counsel, litigation communications, AI, and privilege.** Doc. 63 states that Leafwell will seek communications between MFG executives and general counsel and will inquire into alleged unethical use of AI. Those topics implicate attorney-client privilege, work product, litigation communications, counsel files, legal strategy, and Rule 502(d). Leafwell cannot place privileged and work-product-adjacent discovery in the CMR while leaving the privilege section blank and refusing to identify any protection, clawback, logging, or Rule 502(d) protocol.

4. **ESI scope.** Doc. 63 identifies emails, texts, other communications, videos, marketing materials, financial materials, and other categories. MFG needs Leafwell's position on custodians, date ranges, platforms, search terms, production format, metadata, preservation, and proportionality before MFG

can submit its own ESI proposal. A CMR that merely says "emails/texts" does not satisfy meaningful Rule 26(f) planning.

5. **Discovery sequencing and phasing.** Leafwell unilaterally states discovery should not be phased. MFG needs Leafwell's position on why full merits discovery should proceed before or without threshold issues, privilege issues, ESI issues, protective-order issues, pending motions, and related-proceeding boundaries being addressed. Phasing is a CMR issue, not a collateral demand.

6. **Protective order and sensitive information.** Leafwell's proposed discovery may implicate confidential business records, financial records, physician communications, patient-adjacent information, CRM/customer data, marketing analytics, litigation communications, and internal business strategy. MFG cannot submit a responsible discovery plan without knowing Leafwell's position on protective-order treatment before such materials are produced.

7. **Related proceedings and the order denying consolidation.** Doc. 63 checks the related-action category, but the Court has already denied consolidation after finding the two actions have different primary issues and likely lack substantial factual or witness overlap. MFG needs Leafwell's position on whether Leafwell intends to use discovery or CMR language in

this case to blur that boundary. Without that position, MFG cannot prepare a separate statement that protects the distinction the Court already recognized.

8. **Authority to state Leafwell's case-management position.** Leafwell has used multiple attorneys to request conferrals, limit topics, refuse answers, send CMR materials, and file Doc. 63. MFG does not challenge Leafwell's right to staff the case as it chooses. But Rule 16, Rule 26(f), Local Rule 3.02, ESI, privilege, protective-order terms, discovery sequencing, and CMR language require a reliable statement of Leafwell's position. MFG needs one designated case-management attorney, or a clear protocol that positions stated by any appearing counsel are Leafwell's positions unless promptly corrected in writing.

These are not merits interrogatories disguised as conferral. They are the CMR issues Leafwell itself addressed, incompletely, in Doc. 63. If Leafwell can unilaterally state that discovery should not be phased, no special handling is needed, general-counsel communications are discoverable, and privilege requires no stated protocol, then MFG is entitled to know the positions underlying those statements before MFG is required to submit its own case-management statement.

**C. MFG Should Receive Leave to File a Separate Case-Management Statement After Leafwell Identifies Its Positions.**

Felix, Leafwell's Florida counsel, recognized the proper procedural solution: if agreement cannot be reached, the parties may note their respective positions in the CMR or otherwise. Ex. C. MFG agrees with that principle. The problem is that Leafwell filed first, unilaterally, with disputed statements and incomplete privilege, ESI, phasing, and special-handling sections. MFG should not be forced to respond to a moving target or to submit a separate statement without knowing Leafwell's positions on the case-management issues Leafwell has already placed at issue.

MFG therefore requests leave to file a separate case-management statement after Leafwell identifies its positions **<u>on the eight categories above</u>**, or after the Court conducts a preliminary pretrial conference and provides guidance. MFG also requests confirmation that its separate statement may identify agreed issues, disputed issues, and issues that have not been meaningfully conferred upon without being treated as a refusal to confer.

**D. A Protective Order, ESI Protocol, and Rule 502(d) Order Should Precede Sensitive Discovery.**

Leafwell's own Doc. 63 makes this relief necessary. Leafwell says it will seek communications involving MFG executives and general counsel and will

12

inquire into alleged AI-related conduct. Those topics raise privilege, work-product, confidentiality, ESI, and proportionality issues. They also risk needless satellite litigation if the parties begin discovery before the Court or the parties establish a protective order, ESI protocol, and Rule 502(d) non-waiver protection.

MFG requests an order requiring the parties to meet and confer on a protective order, ESI protocol, and Rule 502(d) order before production of confidential business records, financial records, marketing analytics, CRM/customer data, physician communications, patient-adjacent information, attorney-client or work-product-adjacent materials, litigation communications, or similar sensitive materials.

## E. A Preliminary Pretrial Conference and Conferral Protocol Are Warranted.

Rule 16 exists to establish early and continuing control so that a case is not protracted because of lack of management. That is what is needed here. Leafwell filed a unilateral CMR that simultaneously accuses MFG of refusing to confer and demonstrates why a meaningful conference could not occur without first identifying the disputed CMR positions.

The Court should set a preliminary pretrial conference and require the parties to identify: (1) issues actually agreed; (2) issues discussed but not resolved; (3) issues not meaningfully conferred upon; and (4) the attorney authorized to speak for each party on CMR, Rule 26(f), Local Rule 3.02, ESI, privilege,

protective-order, discovery-sequencing, and related-proceeding issues. That relief does not decide the merits. It ensures that the CMR process remains accurate.

## V. REQUESTED RELIEF

MFG respectfully requests that the Court enter an order:

1. clarifying that Leafwell's unilateral Case Management Report, Doc. 63, is not an agreed Case Management Report and does not bind MFG except to the extent MFG expressly agrees in writing or the Court orders otherwise;

2. confirming that MFG has not waived any jurisdictional, service, venue, due-process, standing, privilege, work-product, confidentiality, privacy, ESI, relevance, proportionality, damages, discovery, or case-management objection by participating in the CMR process;

3. setting a preliminary pretrial conference before entry of a scheduling order, or otherwise providing case-management guidance before MFG's separate statement is due;

4. requiring Leafwell, before MFG's separate case-management statement is due, to identify its position on: (a) the claims and defenses actually at issue; (b) damages and causation theories relevant to discovery scope; (c) whether discovery into attorney-client, general-counsel, litigation, or AI-related communications is sought and, if so, under what privilege and Rule 502(d) protocol; (d) proposed ESI custodians, date ranges, platforms, production

format, metadata, search terms, and search methodology; (e) whether discovery should be phased; (f) whether a protective order is required before sensitive materials are produced; (g) the effect, if any, of related proceedings and the order denying consolidation; and (h) the attorney authorized to state Leafwell's case-management position;

5. granting MFG leave to file a separate case-management statement after Leafwell identifies those positions or after the preliminary pretrial conference;

6. requiring the parties to distinguish in any CMR or separate statement between issues actually agreed, issues discussed but not resolved, and issues not meaningfully conferred upon;

7. requiring the parties to meet and confer concerning a protective order, ESI protocol, and Rule 502(d) order before production of confidential business records, financial records, physician communications, patient-adjacent information, CRM/customer data, marketing analytics, payment data, platform records, attorney-client or work-product-adjacent materials, litigation communications, or similarly sensitive materials;

8. requiring each party to identify one case-management attorney authorized to speak for that party on CMR, Local Rule 3.02, Rule 26(f), ESI, privilege, protective-order, discovery-sequencing, and related-proceeding issues, or

requiring that positions stated by any appearing counsel during the CMR process bind the party for that process unless promptly corrected in writing; and

9.  granting such further relief as the Court deems just and proper.

## VI. CONCLUSION

MFG is not asking the Court to decide the merits by case-management order. MFG is asking the Court to keep the case-management process honest. Leafwell filed a unilateral CMR after refusing to answer questions tied directly to the CMR form. The Court should clarify that Doc. 63 is unilateral and nonbinding, require Leafwell to identify its CMR positions, permit MFG to file a separate case-management statement, and require appropriate protective, ESI, privilege, and conferral safeguards before discovery proceeds.

Dated: July 6, 2026

Respectfully submitted,
/s/ Jason K. Castro
Jason K. Castro, Esq.
Florida Bar No. 118604
LAW OFFICE OF JASON K. CASTRO, PLLC
625 Quincy Lane
Wexford, Pennsylvania 15090
Telephone: (718) 702-5540
Email: jason@goldengatelegalcenter.com
Service Email:
CastroLaw.Service@gmail.com

Counsel for Defendant The Doc App,
Inc. d/b/a My Florida Green

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this July 6, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will furnish service by electronic mail to all counsel of record.

/s/ Jason K. Castro
Jason K. Castro

## CERTIFICATE OF COMPLIANCE

I certify that this motion is prepared in Times New Roman 14-point font with one-inch margins and is intended to comply with the applicable Federal Rules of Civil Procedure and Local Rules of the Middle District of Florida.

/s/ Jason K. Castro
Jason K. Castro