UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LEAFWELL, INC., a Delaware corporation,

Plaintiff,

v. Case No: 2:25-cv-1132-KCD-KRH

THE DOC APP, INC. d/b/a MY FLORIDA GREEN, a Florida corporation,

Defendant.

---

**ORDER**

Plaintiff Leafwell, Inc. alleges that its competitor, The Doc App, Inc. ("MFG"), orchestrated a campaign of harassment led by its CEO, Nicholas Garulay, and its in-house counsel, Jason Castro. MFG now moves to dismiss the complaint or, in the alternative, strike any improper material. (Doc. 52.)[1] Because MFG's arguments are either waived or lack substance, the motion is **DENIED.**

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and subsequent citations.

## I. Background

The parties are familiar with the alleged facts, which the Court has extensively covered. *See Leafwell, Inc. v. The Doc. App, Inc.*, No. 2:25-cv-1132-JES-DNF, 2026 WL 1109413, at *3-4 (M.D. Fla. Apr. 24, 2026). For present purposes, a brief recap will suffice.

Leafwell and MFG are competitors in Florida's medical marijuana certification industry. (Doc. 46 at ¶¶ 1, 14-15.) Apparently, MFG was unsatisfied with its share of the market. So its CEO (Garulay) and In-House (Castro) launched a harassment campaign to push Leafwell out. (*Id.* ¶ 19.)

Castro first filed a lawsuit that purportedly sought to stop Leafwell's "unlawful practices[.]" (*Id.* ¶¶ 31, 35, 156.) He then fired off demand letters to at least nine of Leafwell's business associates, threatening them with legal consequences if they continued working with the company. (*Id.* ¶¶ 71-72, 161-63.) Garulay, meanwhile, took a more in-person approach. He interrupted a Leafwell business event, handed out copies of the complaint, and caused a scene that sent attendees fleeing. (*Id.* ¶¶ 85-90, 170-72.) Garulay then appeared on television, where he broadcast the complaint's accusations against Lwafwell. (*Id.* ¶¶ 50, 173-74.)

The strategy took a toll. Leafwell lost business with its customers, multiple dispensaries, and at least one physician because of MFG's actions. (*Id.* ¶¶ 75, 82, 166, 172, 177.)

**II. Legal Standard**

To survive a motion to dismiss, "a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The question is not whether the plaintiff will ultimately win, but simply whether the complaint can proceed into discovery.

As this stage, we must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). That benefit of the doubt, however, has limits. The Court need not accept legal conclusions dressed up as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading that offers nothing more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not unlock the courthouse doors. *Id.* In other words, the plaintiff must tell a factual story that makes the defendant's liability *plausible*, not just point a finger and recite the law. *See,*

*e.g.*, *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

"We use a two-step process to determine whether a claim survives Rule 12(b)(6) scrutiny." *Caterpillar Fin. Servs. Corp. v. Venequip Mach. Sales Corp.*, 147 F.4th 1341, 1346–47 (11th Cir. 2025). First, "we determine what must be plead for each cause of action. . . . Then, we consider the well-pleaded factual allegations . . . to determine whether they plausibly suggest an entitlement to relief." *Id.*

**III. Discussion**

To start, MFG demands dismissal of claims that do not exist in the operative complaint. (Doc. 52 at 8 ("Counts I and II should be dismissed or struck because the Court dismissed them without leave to amend."). The Court previously dismissed the original Counts I and II without leave to amend, and Leafwell rightfully left them out of its latest complaint. (*See* Doc. 62 at 9.) MFG's insistence on briefing non-existent claims suggests it is either failing to read the pleadings or, once again, blindly relying on an AI program. Whatever the explanation, this kind of briefing is sloppy lawyering at best and an AI hallucination at worst. This Court has already sanctioned MFG's counsel—Defendant Jason Castro—for citing hallucinated case law. *DOC App, Inc. v. Leafwell, Inc.*, No. 2:25-CV-838-SPC-NPM, 2025 WL 3288251, at *5 (M.D. Fla.

Nov. 26, 2025). If counsel continues to use a chatbot to practice law, he will invite the exact same result and a referral to the Florida bar.

MFG separately presses several challenges to Counts II, III, and IV that were fully available but not asserted in its last motion to dismiss (Doc. 26). Since MFG failed to raise these arguments the first time around, they are deemed waived. *See* Fed. R. Civ. P. 12(g)(2); *see, e.g.*, *Kindred Hosps. E., LLC v. Med. Mut. Servs., LLC*, No. 8:23-cv-1075-KKM-CPT, 2025 WL 2374027, at *9-10 (M.D. Fla. June 11, 2025). Turning to MFG's request to strike, it is entirely hollow. MFG asks the Court to strike "improper" material but fails to cite which allegations are objectionable. This Court is not an advocate. It cannot parse through which the pleadings and guess which facts the defendant might want excised. *See United States ex rel. Sedona Partners LLC v. Able Moving & Storage Inc.*, 146 F.4th 1032, 1044-45 (11th Cir. 2025); Fed. R. Civ. P. 12(f). So, MFG's motion is **DENIED** as to these arguments.

That leaves only MFG's argument that Leafwell fails to state an abuse of process claim. First, as MFG sees it, Leafwell does not allege post-issuance misuse of process because Leafwell only pleads pressure, motive, publicity, and business reaction. (Doc. 52 at 9-11.) Second, Leafwell's theories are barred by Florida's litigation privilege. (*Id.* at 11-12.) Neither argument carries the day.

To state an abuse of process claim, a plaintiff must show: (1) an illegal, improper, or perverted use of process; (2) an ulterior motive; and (3) damages. *Steinmetz v. Pickholtz*, 414 So. 3d 309, 319 (Fla. Dist. Ct. App. 2025). Since abuse of process "is concerned with the improper use of process after it issues," whether a plaintiff will prevail turns on if the defendant "misused process after it was served so as to exert some form of leverage over [the plaintiff]." *Id.* Merely alleging malicious intent and pre-process events are not enough. *Id.* at 315-16.

Leafwell's complaint plausibly alleges an abuse of process claim. According to Leafwell, MFG used its initial lawsuit (the process) as a means "to threaten, scare, and extort" Leafwell's business partners into severing their relationship. (Doc. 46 at ¶¶ 71, 77, 159-60.) MFG's lawsuit was not used to get Leafwell to cease what MFG saw as wrongful conduct, but rather to steal Leafwell's business partners (the ulterior motive and damages). (Doc. 46 at ¶ 177.) These facts, accepted as true, plausibly state a claim. *See, e.g.*, *Glob. Candle Gallery Licensing Co. v. Nabozny*, No. 8:08-CV-2532-T-30TGW, 2009 WL 3852794, at *4 (M.D. Fla. Nov. 18, 2009).

Leafwell's litigation privilege defense also falls short at this stage. Under Florida law, the litigation privilege is an affirmative defense for "any act occurring during the course of a judicial proceeding, regardless of whether the

act involves . . . [some] tortious behavior . . . so long as the act has some relation to the proceeding." *Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 470 F.3d 1036, 1042 (11th Cir. 2006); *see also N. Star Cap. Acquisitions, LLC v. Krig*, 611 F. Supp. 2d 1324, 1329 (M.D. Fla. 2009); *St. Paul Mercury Ins. Co. v. Coucher*, 837 So. 2d 483, 487 (Fla. Dist. Ct. App. 2002). But a plaintiff is not required to negate an affirmative defense in its complaint. *Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024). Thus, a complaint can only be dismissed based on an affirmative defense where it "is apparent on the face" of the pleading. *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020).

As currently pled, it is not apparent that *all* the actions or damages sought (*i.e.*, attorney's fees) were incurred for conduct during judicial proceedings or for conduct necessarily preliminary to bringing a lawsuit. *See, e.g.*, *Grippa v. Rubin*, 133 F.4th 1186, 1197 (11th Cir. 2025) (holding the litigation privilege did not protect an attorney's letters mailed outside judicial proceedings); *Meyer v. Fay Servicing, LLC*, 385 F. Supp. 3d 1235 (M.D. Fla. 2019) (finding the complaint did not allow a conclusive determination that the litigation privilege applies); *Suchite v. Kleppin*, No. 10-21166-CIV, 2011 WL 1814665, at *3 (S.D. Fla. Apr. 29, 2011) (holding the litigation privilege did not apply to actions taken outside the context of judicial proceedings). While

certain components of Leafwell's abuse of process claim might well lose to the litigation privilege defense, others might not. Those are questions for another day when the record is developed.

Accordingly, Defendant's Motion to Dismiss and/or Strike Improper Matter (Doc. 52) is **DENIED.**

**ORDERED** in Fort Myers, Florida on September 16, 2026.

Kyle C. Dudek
United States District Judge